Argued and submitted February 4, reversed May 8, petition for review allowed
August 6, 2002 (334 Or 491)
See later issue Oregon Reports

## WASHINGTON COUNTY POLICE OFFICERS' ASSOCIATION
### and Paul Cuff,
*Respondents,*

*v.*

## WASHINGTON COUNTY,
*Petitioner.*

### UP 76-99; A114208

45 P3d 515

Sheryl S. Hayashida argued the cause for petitioner. With her on the briefs was Dan R. Olsen.

Jaime B. Goldberg argued the cause and filed the brief for respondents.

C. Akin Blitz argued the cause for *amici curiae* Oregon State Sheriffs' Association and Oregon Association Chiefs of Police. With him on the brief were David H. Wilson and Bullard Smith Jernstedt Harnish.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

Washington County refused to comply with an arbitration order requiring it to reinstate a deputy sheriff who had failed a drug test and lied about his use of marijuana. The deputy's collective bargaining unit, the Washington County Police Officers' Association (the association), filed a grievance with the Employment Relations Board (ERB), and ERB concluded that the county's failure to comply with the arbitration order was an unfair labor practice. The county seeks judicial review of that ERB order. At issue is whether ORS 243.706(1), under which an arbitration award ordering reinstatement of a public employee may not be enforced if the award does not "comply with public policy requirements as clearly defined in statutes or judicial decisions[,]" justifies the county's refusal. Reviewing for errors of law, we conclude that reinstating the deputy is contrary to such policy requirements. The county's refusal to reinstate the deputy therefore was not an unfair labor practice. We reverse.

Paul Cuff was hired as a deputy sheriff by the county in 1990. After some eight years, the county assigned him to work as a corrections officer in the county's transport division, where his duties included driving a bus to move inmates from site to site. Under federal law, those duties put him in a class of employees whom the county had to test periodically for drug use. In January 1999, Cuff tested positive for marijuana. When confronted with that result, he told the county's medical review officer, his partner, and another officer that the positive result was due to herbal capsules he had taken to help him sleep during a time of stress. He later recanted that story and told his coworkers that the result was due to having smoked marijuana, off duty, nearly every day for a month before the drug test. The county then initiated an internal investigation.

During an interview with the internal investigator, Cuff initially stated that the last time he had smoked marijuana was a week before the test. When the investigator told him that his THC levels were inconsistent with marijuana use that far in the past, Cuff responded that his most recent use could have been as few as three or four days before the

test. The investigator's report concluded that Cuff had illegally bought and consumed marijuana, that his violations did not occur while he was on duty, that there was no evidence that he had reported to work under the influence of any controlled substance, that he had originally lied about the source of marijuana in his system, and that his testimony as to the amount and recency of his use was inconsistent with the levels of THC detected in the test. The county then terminated Cuff, concluding that he had violated sheriff's office policies by unlawfully using marijuana, being unfit for duty, engaging in unlawful acts, providing untrue information to another person in the sheriff's office, and providing false information when providing an official report or statement. The termination occurred despite a provision of the collective bargaining agreement between the county and the association under which an officer's first-time failure of a drug test resulted in referral to counseling but not discipline.[1]

The association grieved Cuff's discharge and, pursuant to the collective bargaining agreement, submitted the grievance to arbitration. The arbitrator found that the county had violated the collective bargaining agreement and that Cuff's untruthfulness did not provide just cause for termination because it "does not constitute a sufficient modification or lying under oath to merit removal." The arbitrator ordered Cuff reinstated as a deputy sheriff but did not award back pay, effectively imposing a seven-month unpaid suspension as penalty for his misconduct.

The county refused to implement the award. The association then initiated this proceeding before ERB, contending that the county's refusal violated ORS 243.672(1)(g), which decrees it an unfair labor practice for a public employer to violate an "agreement to * * * accept the terms of an arbitration award." The county, for its part, justified its refusal on the ground that reinstatement was contrary to

---

[1] Article 39, section 6, of the agreement provides:

"An employee who has tested positive for the presence of illegal drugs pursuant to this section shall be referred to an employee assistance program or drug and alcohol counseling. Unless the employee has previously tested positive for the use of drugs, or refuses to participate in the employee assistance program or counseling, the employee may not be disciplined for the use of illegal drugs."

public policy. The county relied on ORS 243.706(1), which provides, in part:

> "As a condition of enforceability, any arbitration award that orders the reinstatement of a public employee or otherwise relieves the public employee of responsibility for misconduct shall comply with public policy requirements as clearly defined in statutes or judicial decisions including but not limited to policies respecting sexual harassment or sexual misconduct, unjustified and egregious use of physical or deadly force and serious criminal misconduct, related to work."

ERB ruled in favor of the association, concluding that the award did not violate public policy, reasoning as follows:

> "Although there is a public policy prohibiting illegal drug use by employees (like [Cuff]) holding safety-sensitive positions, there are also public policies that encourage rehabilitation of employees who test positive for drugs and that favor the finality of labor arbitration awards. The award here severely disciplines Cuff, orders appropriate drug counseling, and does not require his reinstatement to a safety-sensitive position. Under these circumstances, the award ordering his reinstatement does not violate public policy prohibiting such drug use."

ERB also found that there was no clearly defined public policy against dishonesty that precluded Cuff's reinstatement. The county seeks judicial review of those conclusions.

■     At the outset, we note that the unambiguous terms of the statute dictate that the public policy analysis be directed at the arbitration award itself, not the conduct for which discipline was imposed. *See Deschutes Cty. Sheriff's Assn. v. Deschutes Cty.*, 169 Or App 445, 453, 9 P3d 742 (2000), *rev den* 332 Or 137 (2001) ("[I]t is the *award* that must comply with public policy.") (emphasis in original). The dispositive question in this case, therefore, is not whether a person who purchases and uses marijuana engages in conduct that is contrary to public policy. Clearly he does. *See, e.g.,* ORS 475.992(4)(f) (possession of less than an ounce of marijuana is a violation punishable by a fine of between $500 and $1,000). The question, rather, is whether the *reinstatement* of a public safety officer who has admitted to repeated illegal off-duty

use of marijuana complies with public policy. That is an entirely different question.

Further, ORS 243.706(1) unambiguously defines what kinds of public policies count: those which are "clearly defined in statutes or judicial decisions." Thus, federal cases such as *Eastern Associated Coal Corp. v. UMW*, 531 US 57, 121 S Ct 462, 148 L Ed 2d 354 (2000), are not instructive. In those cases, the Supreme Court applied its general supervisory authority to limit enforcement of contracts that are contrary to public policy. *See W. R. Grace & Co. v. Local 759*, 461 US 757, 766, 103 S Ct 2177, 76 L Ed 2d 298 (1983) (citing *Hurd v. Hodge*, 334 US 24, 34-35, 68 S Ct 847, 92 L Ed 1187 (1948), in which the Court refused to enforce racially restrictive covenants that violated public policy as expressed in the Fifteenth Amendment to the United States Constitution and the Civil Rights Act). In *Eastern Associated Coal Corp.*, the Court held that several relevant policies, including policies against drug use that favored rehabilitation and determination of disciplinary questions through arbitration, should be "taken together" when determining if an award violates public policy. 148 L Ed 2d at 363. Under Oregon law, the relevant policies are only those clearly defined in statutes or judicial decisions.

■    With those guidelines in mind, we conclude that ERB erred. The only statute or judicial decision relevant to the precise question—that is, whether public policy dictates the nonretention of a public safety officer who has used marijuana—that the parties cite or that we can find is ORS 181.662. At the time that Cuff used marijuana and was discharged, ORS 181.662(3) (1999) provided:

"The [Department of Public Safety Standards and Training] shall deny or revoke the certification of any public safety officer * * * after written notice and hearing * * * based upon a finding that:

"* * * * *

"(c)  The public safety officer or instructor has been convicted of violating any law of this state or any other

jurisdiction involving the unlawful use, possession, delivery or manufacture of a controlled substance, narcotic or dangerous drug."[2]

Although the Legislative Assembly has chosen to classify offenses involving small quantities of marijuana as mere violations, marijuana remains a "controlled substance," ORS 475.005(6), the possession of which is punishable by conviction and fine. ORS 475.992(4)(f).[3] Cuff was a "public safety officer." ORS 181.620(16) ("public safety officer" includes "corrections officers"). We note that other subsections of ORS 181.662 (1999) specify that the department *may* deny or revoke certification for some conduct; conviction for unlawful possession of a controlled substance is among the only officer conduct that *requires* loss of certification. We take this statute, then, as a clear statement of public policy against the continued certification of public safety officers who use controlled substances, including marijuana.

It is true that Cuff did not receive notice or a hearing to determine whether he used marijuana, nor was he "convicted" of anything. Those facts demonstrate that, under the

---

[2] ORS 181.662 was amended by the 2001 Legislative Assembly to eliminate the statutory specification that conviction of violating any drug law is grounds for denial or revocation. Under the new statute, the Department of Public Safety Standards and Training is charged with specifying, by rule, which crimes warrant revocation or denial. The new statute became effective January 1, 2002. Therefore, the old statute, which specifically listed drug offenses as grounds for denying certification, was in effect at the time of Cuff's discharge and ERB's decision in this case.

[3] A person adjudicated guilty of a violation is "convicted" of that violation in the same sense that a person charged and found guilty of criminal conduct is "convicted" of a crime, although the former may not carry the same collateral consequences. *See, e.g.,* ORS 161.565(4) (1997) (repealed and reenacted in 1999 as ORS 153.008(2)) ("Conviction of a violation does not give rise to any disability or legal disadvantage based on conviction of a crime."); ORS 153.260 (1997) (repealed and reenacted in 1999 as ORS 153.108) (If a person commits both a crime and a violation in the same criminal episode, prosecution for one does not bar subsequent prosecution of the other; however, evidence of the first "conviction" is not admissible in that subsequent proceeding.); *but see* ORS 137.106, ORS 137.290, ORS 137.295 (referring to common financial obligations of persons "convicted" of either a "crime" or "violation"); ORS 153.070 (mandating trial on charge of traffic "violation" when "conviction of the violation" would have consequential effect on driving privileges); *see also* ORS 153.111 (referring to "entry of conviction" for traffic, wildlife, school attendance, weights and measures, and boating violations); ORS 153.820(5) (referring to "conviction" of parking violation); ORS 161.685 (referring to "conviction of a violation"); ORS 167.401 (referring to person "convicted" of "violation" of underage purchase or possession of tobacco).

present circumstances, revocation of his certificate is not required; they do not, however, mitigate the public policy statement embodied in the statute, that is, that public safety officers who use marijuana should not be certified. In other words, the fact that the statute requires notice, hearing, and conviction before revocation of a license does *not* imply that retaining officers who use controlled substances contravenes public policy only when the use has been proved in quasi-judicial and judicial proceedings and the consequences are denoted a "conviction." Those proceedings provide procedural safeguards that ensure against erroneous factual determinations and are not relevant in a situation like this one where the facts are undisputed. The clear underlying public policy statement remains: officers who use controlled substances should not be certified.

That being the case, we conclude that ORS 243.706(1) renders the reinstatement award unenforceable, despite the undisputed fact that the county violated the collective bargaining agreement it voluntarily joined. It follows that, in refusing to implement the award, the county did not commit an unfair labor practice.

Because we resolve this case in favor of the county on the basis of Cuff's admitted use of a controlled substance, we do not address its contention that ERB erred in excluding certain testimony allegedly demonstrating the severity of Cuff's conduct in light of his status as a public safety officer nor its contention that Cuff's dishonesty was sufficient to justify refusing to implement the reinstatement award.

Reversed.