Argued and submitted November 6, 2002, decision of Court of Appeals reversed;
case remanded to Court of Appeals for further proceedings February 21, 2003
See 187 Or App 686, 69 P3d 767 (2003)

## WASHINGTON COUNTY POLICE
## OFFICERS' ASSOCIATION
## and Paul Cuff,
*Petitioners on Review,*

*v.*

## WASHINGTON COUNTY,
*Respondent on Review.*

## (ERB UP-76-99; CA A114208; SC S49518)

63 P3d 1167

Jaime B. Goldberg, of Garrettson, Goldberg, Fenrich & Makler, Portland, argued the cause and filed the petition for petitioners on review.

Sheryl Hayashida, Senior Assistant County Counsel for Washington County, Hillsboro, argued the cause and filed the briefs for respondent on review.

Barbara J. Diamond, of Smith, Gamson, Diamond & Olney, Portland, filed a brief for *amici curiae* AFSCME Council 75, Oregon

Education Association and Portland Fire Fighters' Association.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.**

GILLETTE, J.

** Leeson, J., resigned January 31, 2003, and did not participate in the decision of this case.

## GILLETTE, J.

This is an unfair labor practice case in which the dispositive issue is whether an arbitration award that ordered the reinstatement of a county public safety employee who admitted to possessing and using marijuana while off duty complies with "public policy requirements as clearly defined in statutes or judicial decisions." ORS 243.706(1). The Employment Relations Board (ERB) concluded that the award did comply, because it did not violate any clearly defined contrary public policy. The Court of Appeals reversed. *Washington Cty. Police Assn. v. Washington Cty.*, 181 Or App 448, 45 P3d 515 (2002). That court held that reinstating the employee was contrary to public policy and, thus, that the reinstatement award was unenforceable. We allowed review and now hold that, under the facts presented, reinstating the employee does not violate any "public policy requirement[ ] as clearly defined in statutes or judicial decisions." Accordingly, we reverse the decision of the Court of Appeals and remand the matter to that court for further consideration.

We take the following undisputed facts from the decision of the Court of Appeals and from the record. The parties to this case are Washington County (the county), one of its employees, Paul Cuff (the employee), and the union that represents the employee, the Washington County Police Officers' Association (the association). The employee is a deputy sheriff for the county and a member of the bargaining unit represented by the association. When the present dispute arose, the employee was working as a corrections officer in the county's transport division, driving inmates into and out of the county in a commercial-sized bus. Federal law requires the county to test all such employees operating commercial motor vehicles for drug use. 49 CFR § 382.

In January 1999, the county directed the employee to take a urine drug-screening test. The result of the test was positive for marijuana. When a medical examiner confronted the employee with the results of the test, the employee initially denied using illegal drugs, claiming that the positive result was due to his ingestion of certain herbal supplements.

The employee later recanted and told some fellow employees that he had been smoking marijuana off duty nearly every day for a month before the test. The county referred the matter for investigation. During interviews with an investigator, the employee initially stated that he had last used marijuana about a week before the test. After being informed that the chemical levels in his urine were inconsistent with drug use that far in the past, the employee responded that his most recent use could have been as few as three or four days before the test. The investigator's report concluded that the employee had bought and consumed marijuana illegally, that he had committed those violations off duty, that there was no evidence that he had reported to work under the influence of any controlled substance, that he initially had lied about the reason for the positive test result, and that his statements about when and how much marijuana he had used were inconsistent with the results of the urinalysis.

The county fired the employee. The county listed several factors as the basis for that action, including that the employee had violated sheriff's office policies by unlawfully using marijuana, was unfit for duty, had engaged in unlawful acts, had provided false information to another person in the sheriff's office, and had provided false information on an official report or statement.

When the county fired the employee, there was in force a collective bargaining agreement between the county and the association. That agreement governed, among other things, conditions of discipline and an employee's right to recourse for violations of the agreement. Article 39, section 6, of that agreement provided that an employee who tests positive for the use of illegal drugs "shall be referred to an employee assistance program or drug and alcohol counseling." The same section further provided that the employee "may not be disciplined for the use of illegal drugs" unless the employee previously had tested positive for the use of illegal drugs or refused to participate in the employee assistance program or counseling. Other provisions of the collective bargaining agreement permitted employees to file grievances for violations of the terms of the agreement, required that such grievances be submitted to arbitration, and provided that the arbitrator's decision would be final and binding.

In the present case, the association filed a grievance on the employee's behalf, alleging that the county's termination of the employee for his first positive drug test was a violation of Article 39, section 6, of the collective bargaining agreement and, therefore, constituted an unfair labor practice under ORS 243.672(1)(g).[1]

The arbitrator agreed with the employee that the county had violated the agreement when it fired the employee. In addition, the arbitrator rejected the county's contention that the employee's untruthfulness about his marijuana use itself provided just cause for his dismissal, concluding that the employee's changing his story during the course of the investigation "does not constitute a sufficient modification or lying under oath to merit removal." The arbitrator ordered the employee reinstated as a deputy sheriff but did not award him back pay. The result of that refusal to make the reinstatement retroactive was to reduce the employee's penalty for his misconduct from termination to a seven-month suspension without pay.

The county refused to reinstate the employee. The association and the employee then initiated a proceeding before ERB, asserting that the county's refusal to accept the terms of the arbitration award was an unfair labor practice under ORS 243.672(1)(g). The county responded that the arbitration award ordering the employee's reinstatement did not "comply with public policy" as ORS 243.706(1)[2] uses that

---

[1] ORS 243.672(1)(g) provides:

"It is an unfair labor practice for a public employer or its designated representative to do any of the following:

"* * * * *

"(g) Violate the provisions of any written contract with respect to employment relations *including an agreement to arbitrate or to accept the terms of an arbitration award,* where previously the parties have agreed to accept such awards as final and binding upon them."

(Emphasis added.)

[2] ORS 243.706(1) provides:

"As a condition of enforceability, any *arbitration award that orders the reinstatement of a public employee* or otherwise relieves the public employee of responsibility for misconduct *shall comply with public policy requirements as clearly defined in statutes or judicial decisions including but not limited to policies respecting* sexual harassment or sexual misconduct, unjustified and egregious use of physical or deadly force and *serious criminal misconduct, related to work.*"

phrase and, therefore, the county's refusal to accept the award was not an unfair labor practice.

ERB rejected the county's "public policy" argument and held that the county had committed an unfair labor practice under ORS 243.672(1)(g) when it refused to accept the terms of the arbitration award. In so holding, ERB stated:

> "[T]he award reinstating the [employee] does not violate any clearly defined public policy. Although there is a public policy prohibiting illegal drug use by employees (like grievant) holding safety-sensitive positions, there are also public policies that encourage rehabilitation of employees who test positive for drugs and that favor the finality of labor arbitration awards. The award here severely disciplines [the employee], orders appropriate drug counseling, and does not require his reinstatement to a safety-sensitive position. Under these circumstances, the award ordering his reinstatement does not violate public policy prohibiting such drug use. We also conclude that the award ordering reinstatement does not violate any alleged policy against 'dishonesty' in the law enforcement workplace. Neither the authority cited to us nor the factual findings of the arbitrator support a determination that the award is unenforceable on this ground."

The county sought judicial review of ERB's decision in the Court of Appeals. There, the county repeated its arguments that clearly defined public policies against both illegal drug use and dishonesty by public employees preclude the employee's reinstatement. In addition, the county contended that ERB had erred in excluding certain testimony that the county had offered in an attempt to flesh out the existence and scope of pertinent public policy, as well as to explain the severity of the employee's conduct.

As noted, the Court of Appeals reversed. That court held that ORS 181.662 (1999) constituted a relevant public policy against the continued employment of a deputy sheriff

---

(Emphasis added.) As the emphasized parts of the statute demonstrate, the phrase, "comply with public policy" is not an open-ended, abstract reference. Instead, it refers to such policy that is "clearly defined in statutes or judicial decisions." The statute then gives examples of the kinds of policies that are included within its scope. Throughout this opinion, references to "public policy" are references to policy so defined and so limited.

who has unlawfully possessed and used a controlled substance. That statute, which was in effect at the time that the employee possessed and used marijuana, provided, in part:

> "(3)   The [Department of Public Safety Standards and Training (DPSST)] shall deny or revoke the certification of any public safety officer * * * after written notice and hearing * * * based upon a finding that:
>
> "* * * * *
>
> "(c)   The public safety officer * * * has been convicted of violating any law of this state or any other jurisdiction involving the unlawful use, possession, delivery or manufacture of a controlled substance, narcotic or dangerous drug."[3]

The Court of Appeals began its analysis by noting that the employee is a public safety officer and that marijuana was and is a controlled substance, the possession of which is punishable by conviction and fine. *Washington Cty. Police Assn.*, 181 Or App at 454. It followed, in that court's view, that ORS 181.662(3) (1999), by mandating decertification of public safety officers who use controlled substances in certain circumstances, is a clear statement of public policy against the continued employment of such officers. *Id.* at 455. Based on that view of the statute, the court concluded that the award ordering the employee's reinstatement was unenforceable, because it failed to comply with the public policy expressed in ORS 181.662 (1999). *Id.* Consequently, according to the Court of Appeals, the county's refusal to reinstate the employee was not an unfair labor practice, notwithstanding the fact that, by firing the employee, the county violated the collective bargaining agreement. *Id.*[4]

The association and the employee sought review of the Court of Appeals' decision on the ground, among others,

---

[3] The legislature subsequently amended ORS 181.662 to eliminate direct reference to drug offenses. That statute now refers simply to "conviction of a crime," ORS 181.662(1)(b), and directs DPSST to enumerate in its administrative regulations specific crimes warranting decertification, ORS 181.662(4).

[4] In light of that holding, the court did not address the county's evidentiary argument or its contention that the employee had been "dishonest" and reinstatement of a dishonest public safety officer also would not comply with public policy. *Id.*

that ORS 181.662(3) (1999) does not "clearly define" public policy relevant to the employee's reinstatement. We allowed review.

■    We begin our analysis, as did the Court of Appeals, by considering the words of ORS 243.706(1): "As a condition of enforceability, any arbitration award * * * shall comply with public policy requirements as clearly defined in statutes or judicial decisions." The Court of Appeals correctly observed that, by its unambiguous terms, that statute "dictate[s] that the public policy analysis be directed at the arbitration award itself, not the conduct for which discipline was imposed." 181 Or App at 452. Thus, the enforceability of the arbitrator's award does not turn on whether the employee's purchase and personal use of marijuana or being dishonest about it in response to the positive drug test violated some public policy. The proper inquiry, instead, is whether the *award itself* complies with the specified kind of public policy requirements. In other words, does an award ordering *reinstatement* of an employee who has purchased and used marijuana and then been dishonest about it fail to comply with some public policy requirements that are clearly defined in the statute or judicial decision? If the reinstatement fails to comply with public policy requirements in that way, then it is unenforceable.

Before we can answer that question, we first must consider what public policy requirements are relevant to our analysis. Under ORS 243.706(1), the only sources that we may consult regarding relevant public policy requirements are statutes and judicial decisions. Thus, under the statute's express terms, we may not turn to statements of public policy that, arguably, we might find in administrative rules, employment manuals, office policies, or proclamations by administrative officials. Moreover, the public policy requirements must be "clearly defined." "Defined" means "clearly outlined, characterized, or delimited." *Webster's Third New Int'l Dictionary* 592 (unabridged ed 1993). "Clearly" means "1: in a clear manner * * * 2: of something asserted or observed : without doubt or question." *Id.* at 420. Therefore, to be pertinent to our analysis, a statute or judicial decision must outline, characterize, or delimit a public policy in such a

way as to leave no serious doubt or question respecting the content or import of that policy.

■ The Court of Appeals held that ORS 181.662(3) (1999) contained such a clear definition of public policy. As described above, that statute mandated denial or revocation of the certification of any public safety officer, after written notice and a hearing, upon a finding that he or she had been convicted of violating, among other things, any law involving the unlawful use or possession of a controlled substance. The Court of Appeals concluded that that statute constituted a "clear statement of public policy against the continued certification of public safety officers who use controlled substances, including marijuana." 181 Or App at 454. The court acknowledged that neither the county nor the state had provided the employee with notice or a hearing respecting his certification, nor had the employee been convicted of any offense. Nonetheless, the court concluded that those facts did not "mitigate the public policy statement embodied in the statute, that is, that public safety officers who use marijuana should not be certified." 181 Or App at 455.

Of course, whether or not the employee should continue to be certified is not the question; the award addresses the employee's *reinstatement*. But ORS 181.662(3) (1999) is not a statute about employment or reinstatement. Moreover, and even if the employee's certification were at issue in this case, it does not appear that the employee's certification as a public safety officer has been or could be revoked on the basis of his marijuana use, unless and until he had been convicted of such use. Therefore, and even accepting the proposition that ORS 181.662(3) (1999) defined a public policy concerning the continued certification of a public safety officer who has been convicted of drug-related offenses, we do not agree that that statute defined a clear public policy respecting the continued certification of a public safety officer who has *not* been convicted of any offense. *A fortiori*, the statute does not define a clear public policy respecting the separate question of such an officer's reinstatement.

From the foregoing, the difficulty with the Court of Appeals' analysis is obvious. As noted, ORS 243.706(1) permits a party subject to an otherwise valid arbitrator's award

to refuse to accept that award only if the award fails to comply with public policy requirements that are "clearly" defined, that is, delimited in such a way as to leave no serious doubt as to their terms. ORS 181.662(3) is not the source of such a policy respecting the facts of this case. The statute's scope of application, which is limited to convictions alone, demonstrates our point: If the legislature meant to express a policy against *use*, rather than *conviction*, it would have been easy to do so. Because it did not do so, we cannot say that the public policy requirement on which the Court of Appeals relied exists at all, much less is "clearly" defined, as that phrase is used in ORS 243.706(1).

As an alternative, but related, argument, the county suggests that the employee's conduct in purchasing and using marijuana off the job is "serious criminal misconduct, related to work," which ORS 243.706(1) specifically enumerates as an example of a clearly defined public policy that preludes reinstatement. However, ERB observed that the quantity of marijuana involved amounted only to a violation, punishable solely by a fine. *See* ORS 475.992(4)(f) (so providing). In addition, there was evidence at the arbitration hearing that no one in Oregon had been or would likely be prosecuted for a similar offense. Thus, there is no basis in the record for requiring ERB to hold that the employee had engaged in "serious criminal misconduct, related to work," as that phrase is used in ORS 243.706(1) and, thus, was not entitled to reinstatement on that ground.

The county has not referred this court to any statute, other than ORS 181.662(3) (1999), or to any judicial decision that it claims contains a clearly defined public policy that would preclude the employee's reinstatement. Neither have we found any such policy. It follows that the Court of Appeals erred in holding that the arbitration award of reinstatement was unenforceable under ORS 243.706(1). The case must be remanded to the Court of Appeals for resolution of the county's other arguments, including its contention that reinstatement of the employee would violate public policy clearly defined in statutes or court decisions regarding dishonesty, and its further assertion that ERB erred in refusing to consider certain evidence.

The decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals for further consideration.