## WASHINGTON COUNTY POLICE OFFICERS' ASSOCIATION
and Paul Cuff,
*Respondents,*

*v.*

## WASHINGTON COUNTY,
*Petitioner.*

### UP 76-99; A114208

69 P3d 767

Sheryl S. Hayashida argued the cause for petitioner. With her on the briefs was Dan R. Olsen.

Jaime B. Goldberg argued the cause and filed the brief for respondents.

C. Akin Blitz argued the cause for *amici curiae* Oregon State Sheriffs' Association and Oregon Association of Chiefs of Police. With him on the brief were David H. Wilson and Bullard Smith Jernstedt Harnish.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

Washington County (the county) fired one of its employees, a sheriff's deputy, for purchasing and using marijuana and then lying about it during an internal investigation. An arbitrator ordered the county to reinstate the deputy, and the county refused. The Employment Relations Board (ERB) held that that refusal was an unfair labor practice. The county sought judicial review. In *Washington Cty. Police Assn. v. Washington Cty.*, 181 Or App 448, 45 P3d 515 (2002), *rev'd*, 335 Or 198, 63 P3d 1167 (2003), we reversed ERB and held that the county did not commit an unfair labor practice. We concluded that reinstatement would have been contrary to "public policy requirements as clearly defined in statutes or judicial decisions," and therefore was not required of the county. ORS 243.706(1). The Supreme Court reversed, holding that reinstatement was not contrary to public policy, and remanded to this court for consideration of arguments that the county had made and that we did not reach. *Washington Cty. Police Assn.*, 335 Or at 207. On remand, we now affirm ERB's decision in favor of the Washington County Police Officers' Association (association).

Briefly stated, the undisputed facts are as follows: Deputy Cuff was subjected to a federally mandated drug screening program and tested positive for marijuana. In a subsequent internal investigation, he first lied about his drug use but ultimately admitted purchasing marijuana and smoking it while off duty nearly every day for a month. The county fired him, despite a collective bargaining agreement that prohibited termination for first-time drug offenses. Cuff and his bargaining unit, the association, appealed the dismissal to an arbitrator pursuant to the collective bargaining agreement. The arbitrator found in favor of Cuff and ordered his reinstatement without back pay. The county refused to implement the award, relying on ORS 243.706(1), which provides, in part:

> "As a condition of enforceability, any arbitration award that orders the reinstatement of a public employee or otherwise relieves the public employee of responsibility for misconduct shall comply with public policy requirements as clearly defined in statutes or judicial decisions including

but not limited to policies respecting sexual harassment or sexual misconduct, unjustified and egregious use of physical or deadly force and serious criminal misconduct, related to work."

The association then initiated a proceeding before ERB accusing the county of refusing to implement an arbitrator's award, an unfair labor practice. ORS 243.672(1)(g). ERB found in favor of the association. The county sought judicial review, arguing, first, that ERB should have allowed proffered testimony from several public officials and experts regarding the seriousness of the deputy's conduct and how it was contrary to public policy; and second, that ERB should have concluded that drug use and dishonesty by law enforcement officers were contrary to clearly stated public policy.

We began our opinion by noting that, under *Deschutes Cty. Sheriff's Assn. v. Deschutes Cty.*, 169 Or App 445, 453, 9 P3d 742 (2000), *rev den,* 332 Or 137 (2001), the public policy analysis is directed not at the conduct for which Cuff was disciplined but at the reinstatement. *Washington Cty. Police Assn.*, 181 Or App at 452. We concluded:

"The dispositive question in this case, therefore, is not whether a person who purchases and uses marijuana engages in conduct that is contrary to public policy. Clearly he does. * * * The question, rather, is whether the *reinstatement* of a public safety officer who has admitted to repeated illegal off-duty use of marijuana complies with public policy."

*Id.* at 452-53 (emphasis in original). We answered that question in the negative, holding that such reinstatement did not comport with public policy as clearly stated in ORS 181.662(3) (1999). That statute, before its amendment in 2001, required the state's police certifying agency, the Department of Public Safety Standards and Training, to revoke the certification of any public safety officer who was convicted of the unlawful use of a controlled substance. We acknowledged that the statute made revocation contingent on conviction but held that, despite that fact, "We take this statute * * * as a clear statement of public policy against the continued certification of public safety officers who use controlled substances." *Washington Cty. Police Assn.*, 181 Or

App at 454. In light of that holding, we did not need to address the county's alternative arguments: that ERB erred in excluding proffered testimony from public officials and experts regarding the seriousness of Cuff's misconduct and the ways in which it related to his employment despite having occurred while he was off duty; and that Cuff's dishonesty, as distinct from his use of marijuana, made his reinstatement contrary to public policy.

The Supreme Court reversed. It agreed with our focus on the reinstatement of Cuff and not his misconduct but disagreed with our conclusion that reinstatement violated clearly stated public policy:

> "[I]t does not appear that the employee's certification as a public safety officer has been or could be revoked on the basis of his marijuana use, unless and until he had been convicted of such use. Therefore, and even accepting the proposition that ORS 181.662(3) (1999) defined a public policy concerning the continued certification of a public safety officer who has been convicted of drug-related offenses, we do not agree that that statute defined a clear public policy respecting the continued certification of a public safety officer who has *not* been convicted of any offense. *A fortiori*, the statute does not define a clear public policy respecting the separate question of such an officer's reinstatement.

> "From the foregoing, the difficulty with the Court of Appeals' analysis is obvious. As noted, ORS 243.706(1) permits a party subject to an otherwise valid arbitrator's award to refuse to accept that award only if the award fails to comply with public policy requirements that are 'clearly' defined, that is, delimited in such a way as to leave no serious doubt as to their terms. ORS 181.662(3) is not the source of such a policy respecting the facts of this case. The statute's scope of application, which is limited to convictions alone, demonstrates our point: If the legislature meant to express a policy against *use*, rather than *conviction*, it would have been easy to do so. Because it did not do so, we cannot say that the public policy requirement on which the Court of Appeals relied exists at all, much less is 'clearly' defined, as that phrase is used in ORS 243.706(1)."

*Washington Cty. Police Assn.*, 335 Or at 206-07 (emphasis in original). The Supreme Court remanded the case, instructing us to address the county's other arguments.

■ The Supreme Court's opinion itself disposes of the county's argument that ERB erred in refusing to accept proffered evidence from public officials and other experts regarding the seriousness and work-relatedness of Cuff's misconduct. That evidence, according to the county, would have shown that "having truthful law enforcement personnel is more relevant and important than for employees in other occupations"; it would have shown "the nexus between the misconduct and the public policies"; it would have shown "how the misconduct could impact the work of a corrections officer"; and it would have "assist[ed] in determining whether reinstatement of a law enforcement officer who admitted to misconduct violates public policies as they relate to public safety work." The evidence, in other words, would have supported the proposition that many officials and experts believed that employing deputies who did what Cuff did was bad public policy. None of those showings, however, is relevant to any issue in the case. The parties agree about the nature of Cuff's misconduct: dishonesty and use of a controlled substance. The only other relevant question is whether some *statute or judicial opinion* clearly states that reinstating a police officer who has been found to have committed dishonest acts or used a controlled substance, but has not been convicted of any such act, is contrary to public policy. As the Supreme Court stated, "[U]nder the statute's express terms, we may not turn to statements of public policy that, arguably, we might find in administrative rules, employment manuals, office policies, or *proclamations by administrative officials." Id.*, 335 Or at 205 (emphasis added). None of the proffered evidence relates to the existence or nonexistence of a clear statutory or judicial statement of public policy; it is therefore irrelevant, and ERB did not err in excluding it.

■ Nor can the county succeed in arguing that Cuff's dishonesty renders his reinstatement contrary to public policy. Again, the precise question (in light of the Supreme Court's treatment of the drug-use question) is not whether public policy dictates that public safety officers should be honest. Rather, it is this: Does some statute or judicial opinion "outline, characterize, or delimit a public policy" against reinstating a police officer whom an investigation has found

to be, and who has admitted to having been, dishonest but who has not been convicted of dishonesty; and does the statute or decision articulate that policy "in such a way as to leave no serious doubt or question respecting the content or import of that policy"? *Id.* at 205-06. The county has suggested no such statute or judicial decision, and we cannot find one. We therefore affirm ERB's order. The county committed an unfair labor practice when it refused to implement the arbitrator's decision to reinstate Deputy Cuff.

Affirmed.