Argued and submitted May 6, decision of the Court of Appeals and order of the Board on Police Standards and Training affirmed August 5, 1993

Robert Anthony DELEHANT,
*Petitioner on Review,*

*v.*

BOARD ON POLICE STANDARDS
AND TRAINING,
*Respondent on Review.*

(CA A65552; SC S39796)

855 P2d 1088

W. D. Cramer, Jr., of Cramer & Mallon, Burns, argued the cause and filed the petition for petitioner on review.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause and filed the response for respondent on review. With him on the response were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

GILLETTE, J.

## GILLETTE, J.

This is a judicial review of a contested case decided by the state agency that was known as the Board on Police Standards and Training ("BPST").[1] BPST denied petitioner's application for a basic police certificate on the ground that he previously had been convicted of several crimes in Idaho. The Court of Appeals, with one judge dissenting, affirmed the order of BPST. *Delehant v. Board on Police Standards*, 115 Or App 598, 839 P2d 737 (1992). We allowed review and now affirm.

The pertinent facts are not in dispute. While a young man living in Idaho, petitioner was convicted of petty theft, trespassing, and driving under the influence of intoxicants. All of those offenses were misdemeanors under Idaho law. In 1985, petitioner began working for the city of Hines, Oregon, as a police dispatcher and reserve officer. During the next year, an Idaho court set aside petitioner's convictions and dismissed the cases against him, thereby restoring petitioner's civil rights under Idaho law.[2]

Petitioner then went to work as a police dispatcher in the city of Burns. In 1987, he began work as a full-time Burns police officer. In 1988, petitioner completed his course of training at the police academy and requested certification as a police officer from BPST.[3] Before completing his application

---

[1] After the present controversy began, the agency's name was changed by statute. BPST now is denominated the Board on Public Safety Standards and Training. ORS 181.620(1) (amended by Or Laws 1991, ch 380, § 1). We shall use the former initials, "BPST," for consistency with the usage of the parties and of the Court of Appeals.

[2] Idaho Code § 19-2604(1) provides:

"If sentence has been imposed but suspended, or if sentence has been withheld, upon application of the defendant and upon satisfactory showing that the defendant has at all times complied with the terms and conditions upon which he was placed on probation, the court may, if convinced by the showing made that there is no longer cause for continuing the period of probation, and if it be compatible with the public interest, terminate the sentence or set aside the plea of guilty or conviction of the defendant, and finally dismiss the case and discharge the defendant * * *. The final dismissal of the case as herein provided shall have the effect of restoring the defendant to his civil rights."

[3] In Oregon, to be eligible for admission to the state police academy for training as a police officer, a person first must be hired by a police agency. Upon successful graduation from the academy, the person may apply for certification as a police officer from BPST.

form, petitioner sought advice from BPST personnel as to how he should treat his dismissed convictions in Idaho. Petitioner was advised to report the convictions and to attach to the application a copy of the order setting them aside. He did that.

In January 1989, BPST denied petitioner's application for certification, relying on the Idaho convictions. Petitioner requested a hearing, which was scheduled for July 1989. Just four days before that hearing, petitioner obtained an order from the Idaho trial court "expunging" the records of his convictions. At the hearing, petitioner's application was supported by several law enforcement officials who were familiar with his work. Others supported his application by letter.

In December 1989, BPST voted again to deny certification. In April 1990, after petitioner had responded to BPST's findings of fact, BPST issued an Amended Final Order denying certification. In that order, BPST relied on ORS 181.662(1)(b), which provides:

> "The board may deny or revoke the certification of any police officer, corrections officer, parole and probation officer, telecommunicator or emergency medical dispatcher after written notice and hearing, based upon a finding that:
>
> "* * * * *
>
> "(b)   The officer * * * has been convicted of a crime in this state or any other jurisdiction."

In its Amended Final Order, BPST did not rely on or refer to its own rule governing denial of certification for conviction of a crime. At all material times before and at the start of petitioner's hearing before BPST in July 1989, that rule, *former* OAR 259-10-055(20)(a)(1), had provided:

> "The Board may deny or revoke the certification of any officer * * * based upon a finding that the officer * * * had been convicted of a crime designated in any statute of this state as a felony or a crime for which a maximum term of imprisonment of more than one year may be imposed."[4]

---

[4] Similarly, *former* OAR 259-10-015(4)(a) had provided: "No police or corrections officer shall have been convicted by any state or by the Federal Government of a crime, the punishment for which could have been imprisonment in a federal penitentiary or a state prison."

Thus, at the time of petitioner's hearing, although the statute authorized denial of certification for conviction of any "crime," BPST had limited itself by its rule to deny certification only on the basis of conviction of a felony. In February 1990, however, while petitioner's case still was pending before it, BPST adopted OAR 259-08-070, which provides in part:

"(1) Grounds for Denying or Revoking Certification of an Officer:

"(a) The Board may deny or revoke the certification of any police officer * * * based on a finding that:

"* * * * *

"(B) The officer has been convicted of a crime in this state or any other jurisdiction[.]"

Thus, after February 1990, BPST's rule paralleled the wording of the statute, ORS 181.662(1)(b), and permitted denial of certification for conviction of any "crime." Still, BPST's Amended Final Order of April 1990 did not refer to the rule.

After petitioner filed a petition in the Court of Appeals, seeking judicial review of BPST's Amended Final Order, BPST withdrew that order and issued a "Second Amended Final Order" in May 1991.[5] That order relied specifically on the recently promulgated OAR 259-08-070(1)(a)(B). It is that second amended order that was considered by the Court of Appeals and that now is before us.

Petitioner raises two claims of error before this court.[6] He argues, first, that BPST and the Court of Appeals were required by Article IV, section 1, of the Constitution of the United States[7] to give "full faith and credit" to the Idaho

---

[5] Withdrawal of agency orders for reconsideration after a petition for judicial review has been filed is permitted by ORS 183.482(6), which provides:

"At any time subsequent to the filing of the petition for review and prior to the date set for hearing the agency may withdraw its order for purposes of reconsideration. If an agency withdraws an order for purposes of reconsideration, it shall, within such time as the court may allow, affirm, modify or reverse its order."

[6] A third claim of error, based on a theory of estoppel, was argued to the Court of Appeals but has not been renewed here.

[7] Article IV, section 1, of the Constitution of the United States, provides:

"Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general

judgments dismissing the charges against him and expunging the records of his convictions. Second, he argues that application of the new rule, OAR 259-08-070(1)(a)(B), to his case was impermissible. We consider the latter argument first.

Petitioner does not claim that OAR 259-08-070 (1)(a)(B), the rule under which he finally was disqualified, was promulgated improperly. Neither does he contend that BPST exceeded its authority in adopting the rule — as noted, the rule now mirrors the pertinent statute. Finally, petitioner does not deny that the rule validly was in effect at the time of BPST's final decision in his case. His sole complaint on this score is that *his* application nevertheless should have been judged under the somewhat more lenient administrative rule that was in effect both at the time that he applied for certification and at the time that his contested case hearing began.

■ Petitioner argues that application of the more recently promulgated rule to his case constituted "retroactive" application of the rule. We shall assume that he is correct. Retroactive application of a rule is not automatically impermissible, however. The question is one of intent of the promulgating agency or legislature. *See, e.g., Boone v. Wright,* 314 Or 135, 138, 836 P2d 727 (1992) (whether a statutory limitations period applies retroactively depends on the intent of the legislature); *Derenco v. Benj. Franklin Fed. Sav. and Loan,* 281 Or 533, 539 & n 7, 577 P2d 477 (declining to apply a regulation retroactively where there was "no indication of any intention that the regulation be retroactive"), *cert den* 439 US 1051 (1978).

■ Although there is no specific provision in OAR 259-08-070(1)(a)(B) indicating that BPST — the promulgating agency — intended the rule to apply retroactively, the procedural history of this case clearly establishes such an intent. BPST promulgated the rule during the progress of this case, then applied the rule to this case. If that application of the rule was "retroactive," as petitioner claims, then BPST unquestionably intended the rule to apply retroactively.

Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

BPST's application of OAR 259-08-070(1)(a)(B) to petitioner's case was not impermissible. *Cf. Trebesch v. Employment Division*, 300 Or 264, 270, 710 P2d 136 (1985) (agency may decide policy in the course of deciding contested case and apply newly established policy to the case before it).

In the alternative, petitioner argues that he should be deemed to have been "equitably vested" with a right to have the older, more lenient rule applied to his case. This is so, he argues, because both he and the city of Burns have invested substantial sums in training him to become a law enforcement officer, with the reasonable expectation — based on the law in effect at the time — that he would be certified in due course. Petitioner cites no authority, and we know of none, that supports that proposition.

Although the foregoing discussion disposes of the specifics of petitioner's argument, it does not entirely answer the substance of his position. What petitioner really is claiming here, we believe, is that his circumstances simply do not fit under the rule at all. That is, petitioner is arguing that, in the words of OAR 259-08-070(1)(a)(B), he has not "been convicted of a crime in * * * any other jurisdiction." The answer to that contention lies in the legislature's intent in enacting ORS 181.662(1)(b), the statute from which the wording of the pertinent rule is drawn.[8] We turn to that question.

Our inquiry on this point is limited. We seek only the intent of the Oregon legislature. We do not try to determine what the *Idaho* legislature or courts would consider to be a conviction for a crime, because Idaho is not certifying or declining to certify this officer. Idaho, indeed, has no interest in the outcome of this controversy.

On the question of legislative intent, we have not found anything that sheds light on the legislative choice. ORS 181.662(1)(b) was adopted as a part of Oregon Laws 1987, chapter 901. Nothing in the legislative history of that act informs our inquiry. In the absence of such aid, we turn to other, less direct sources. The only other sources that might

---

[8] We look to the intent of the legislature, rather than to the intent of BPST, because the identity of wording between the statute and its implementing rule indicates that the agency did not mean to establish any policy different from that already inhering in the legislative choice.

be of assistance are those dealing with expunction of criminal convictions.

To the extent that expunction or similar practices involving the alteration of criminal histories are relevant, we agree with BPST that the most reasonable conclusion concerning how the legislature intended to deal with the problem that we confront here is that it would have intended to apply Oregon principles, rather than those of other jurisdictions. We say this not from provincialism, but from practicality. It is difficult to imagine that the legislature would have relinquished to foreign legislatures its control over the qualifications of police officer candidates, where the policy choices made by those other legislative bodies easily could be inconsistent with each other and easily could run afoul of valid policy choices made in this state.[9]

■■ Assuming, therefore, that Oregon law relating to alterations in a person's criminal history is the pertinent body of law to consider in this case, we turn to a brief inquiry as to how Oregon would have responded to the various efforts that were made to change petitioner's criminal history. The answer to that inquiry is clear: Those efforts would not have succeeded in Oregon. First of all, Oregon does not have any policy parallel to the "dismissal after conviction" practice in Idaho. Even if such a thing were allowed in Oregon, it would not keep BPST from learning of a conviction. Criminal records that are not expunged are there for all to see.

Second, petitioner would not have been entitled to have his convictions expunged in Oregon, because he committed multiple crimes within 10 years. Under ORS 137.225, a court may seal a person's criminal records, and thereafter the person may, in essence, legally misrepresent that person's own past.[10] However, ORS 137.225(6)(b) provides:

---

[9] It is important to recognize in this regard that the legislative choice would not simply be between Oregon policies and Idaho policies. If the Oregon legislature were to make the policies of other jurisdictions relevant at all in determining what constituted a conviction of a "crime," the pertinent policies of *all* other jurisdictions would be implicated equally. The likelihood of the Oregon legislature choosing to put BPST at the mercy of the policy choices of more than 50 other jurisdictions strikes us as being very small.

[10] ORS 137.225(4) provides in part: "Upon entry of such an order [sealing the record of conviction and other official records in the case], such conviction * * * shall

"Notwithstanding subsection (5) of this section [dealing with crimes as to which expunction may be ordered], the provisions of subsection (1) of this subsection [authorizing expunction] do not apply to:

"* * * * *

"(b) A person convicted, within the 10-year period immediately preceding the filing of the motion pursuant to subsection (1) of this section, of any other offense, excluding motor vehicle violations, whether or not the other conviction is for conduct associated with the same criminal episode that caused the * * * conviction that is sought to be set aside."

In this case, application of ORS 137.225(6)(b) to petitioner's multiple convictions would have prevented him from qualifying for expunction of any of those convictions, had they occurred in Oregon. Again, BPST would have been able to learn of them.

Had petitioner's convictions occurred in Oregon, rather than in Idaho, Oregon law would not have authorized either the dismissals or the orders of expunction on which petitioner relies. He thus has no basis for asserting that he has not been "convicted of a crime" within the meaning of the pertinent statute and rule. To interpret the pertinent statute and rule to require that BPST nonetheless give effect to those dismissals and expunctions would not be consonant with Oregon public policy, as expressed in Oregon law relating to alterations in a person's criminal history. Therefore, we conclude that BPST properly treated petitioner as having been convicted of crimes within the meaning of the applicable law.

■ Petitioner's alternative theory under the "Full Faith and Credit Clause" of the Constitution of the United States is easily answered. This case does not present a full faith and credit issue. Oregon can give full faith and credit to the Idaho policy choice as to when to allow dismissal or expunction of criminal convictions, without in any sense obligating itself to observe a parallel policy here. Indeed, the effect of the Full Faith and Credit Clause with respect to judgments traditionally has been limited to what amounts to an interstate

---

be deemed not to have occurred, and the applicant may answer accordingly any questions related to the occurrence."

rule of claim preclusion. That is, the clause has been treated as creating a rule requiring that a second state give to a judgment between two parties in an originating state the same effect *as to those parties* that the originating state would have given. *See, e.g., Durfee v. Duke*, 375 US 106, 109, 84 S Ct 242, 11 L Ed 2d 186 (1963); *Riley v. New York Trust Co.*, 315 US 343, 348-49, 62 S Ct 608, 86 L Ed 885 (1942); *Morphet v. Morphet*, 263 Or 311, 322, 505 P2d 255 (1972) (all illustrating principle). Petitioner's arguments under the Full Faith and Credit Clause are not well taken.

The decision of the Court of Appeals and the order of the Board on Police Standards and Training are affirmed.