Argued and submitted June 20, affirmed December 26, 2007,
petition for review allowed April 16, 2008 (344 Or 401)

Paul D. CUFF,
*Petitioner,*

*v.*

DEPARTMENT OF PUBLIC SAFETY
STANDARDS AND TRAINING,
*Respondent.*

Department of Public Safety Standards and Training
114352; A132424

175 P3d 983

Daryl S. Garrettson argued the cause for petitioner. On the briefs were Jaime B. Goldberg and Garrettson, Goldberg, Fenrich & Makler, P.C.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

ARMSTRONG, J.

### ARMSTRONG, J.

Petitioner seeks review of an order issued by the Department of Public Safety Standards and Training (DPSST) that revoked his certification to work as a corrections officer. We affirm.

The underlying facts are undisputed. In 1990, the Washington County Sheriff's Office hired petitioner as a corrections officer and in 1991, DPSST issued him a basic corrections certificate. In late January 1999, petitioner failed a drug-screening test, testing positive for marijuana. He initially lied about the use, but later, during an internal investigation, admitted that he had used the drug over a period of 30 days between December 1998 and January 1999. In March 1999, the Sheriff's Office fired petitioner for the drug use and lying about that use.

The Washington County Police Officers' Association (association) contested petitioner's firing by filing a grievance under the collective bargaining agreement between the association and Washington County, ultimately prevailing before the Supreme Court in *Washington Cty. Police Assn. v. Washington Cty.*, 335 Or 198, 63 P3d 1167 (2003). In accord with our subsequent decision on remand from the Supreme Court, *Washington Cty. Police Assn. v. Washington Cty.*, 187 Or App 686, 69 P3d 767 (2003), the Sheriff's Office reinstated petitioner in June 2003.

In January 2004, DPSST issued a notice of intent to revoke petitioner's basic corrections certification,[1] alleging that petitioner failed to meet minimum standards of moral fitness established under OAR 259-008-0010(6) (Dec 22, 2003) because of his drug use and dishonesty about that use in December 1998 and January 1999. After a hearing in December 2004, the administrative law judge concluded that petitioner failed to meet minimum standards of moral fitness

---

[1] That notice of intent to revoke petitioner's certification was the second issued by DPSST. It issued the first in July 2002 on the ground that petitioner had been terminated for cause from his employment. ORS 181.662(3); OAR 259-008-0070(1)(a) (July 5, 2002). Petitioner requested a continuance of the matter until the completion of the appellate process in the case regarding his termination. DPSST took no further action on the July 2002 order.

established under OAR 259-008-0010(6) and that revocation was the appropriate remedy. DPSST thereafter issued a final order in January 2006 revoking petitioner's basic corrections certificate. ORS 181.662(1)(c); OAR 259-008-0070(3)(a)(C) (Apr 11, 2003).

On appeal, petitioner assigns error to DPSST's issuance of the final order revoking his certification. In his primary argument,[2] petitioner asserts that DPSST lacked authority to revoke his certification pursuant to ORS 181.662(1)(c) based on conduct that predated the enactment of the statute. He argues that, at the time of his conduct, DPSST did not have authority pursuant to the applicable statutes and rules to revoke his certification; further, he argues that DPSST could not apply ORS 181.662(1)(c) to conduct that had occurred before the statute's 1999 enactment. In response, DPSST counters that it had implicit authority to revoke petitioner's certification at the time of his conduct, based on the legislative directive to DPSST and the Board of Public Safety Standards and Training (BPSST) to promulgate "reasonable minimum standards" for moral fitness. *See* ORS 181.640(1)(a) (1997); OAR 259-008-0010(5) (June 30, 1998). DPSST further argues that, given that implied grant of revocation authority, ORS 181.662(1)(c) was enacted in 1999 as a remedial "housekeeping" measure that made explicit DPSST's implicit authority to enforce its moral fitness standards and therefore was to be given retrospective effect. We affirm for the following reasons.

We review for errors of law, ORS 183.482(8)(a), and begin by stating the relevant statutes and rules, both those that were in effect at the time of petitioner's conduct in late 1998 and early 1999, and those on which DPSST relied in making its decision. At the time of petitioner's conduct, ORS 181.640(1) (1997) provided, in part:

"[T]o promote enforcement of law * * * services by improving the competence of public safety personnel and their support staffs, * * *

---

[2] Petitioner raises a total of five arguments. We discuss only his first argument and reject the remaining four without discussion.

"(a) [DPSST] shall recommend and [BPSST] shall establish by rule reasonable minimum standards of physical, emotional, intellectual and moral fitness for * * * corrections officers * * *."

*Id.* Accordingly, BPSST had promulgated the following standards:

"Moral Fitness (Moral Character). All law enforcement officers must be of good moral fitness as determined by a thorough background investigation.

"(a) For purposes of this standard, lack of good moral fitness means conduct not restricted to those acts that reflect moral turpitude but rather extending to acts and conduct which would cause a reasonable person to have substantial doubts about the individual's honesty, fairness, respect for the rights of others, or for the laws of the state and/or the nation.

"(b) The following are indicators of a lack of good moral fitness:

"(A) Illegal conduct involving moral turpitude.

"(B) Conduct involving dishonesty, fraud, deceit, or misrepresentation.

"(C) Intentional deception or fraud or attempted deception or fraud in any application, examination, or other document for securing certification or eligibility for certification.

"(D) Conduct that is prejudicial to the administration of justice.

"(E) Conduct that adversely reflects on his or her fitness to perform as a law enforcement officer. Examples include but are not limited to: intoxication while on duty, untruthfulness, unauthorized absences from duty not involving extenuating circumstances, or a history of personal habits off the job which would affect the officer's performance on the job which makes the officer both inefficient and otherwise unfit to render effective service because of the agency's and/or public's loss of confidence in the officer's ability to perform competently."

OAR 259-008-0010(5) (June 30, 1998).[3] At the time of petitioners' conduct, neither ORS 181.640 (1997) nor OAR 259-008-0010(5) (June 30, 1998) specifically set out the consequences for failure to meet minimum standards of moral fitness. Furthermore, although ORS 181.640(1)(e)[4] authorized DPSST to deny or revoke certification, neither ORS 181.662(1) (1997)[5] nor DPSST's rule on denial and revocation, OAR 259-008-0070 (June 30, 1998), stated that a failure to satisfy minimum standards of moral fitness was a ground for revocation.

In 1999, the legislature amended ORS 181.662(1) by adding paragraph (c), which provided, in part, that DPSST could deny or revoke a public safety officer's certification on a finding that "[t]he public safety officer * * * does not meet the applicable minimum [moral fitness] standards" established pursuant to ORS 181.640, in OAR 259-008-0010(6).[6] Thus, the question here is, to the extent that DPSST's application of ORS 181.662(1)(c) to conduct that occurred in 1998 and 1999 can be properly characterized as "retroactive," whether that application was permissible.

■ ■ Retroactive application of a statute or rule is not impermissible *per se*. *Delehant v. Board on Police Standards*, 317 Or 273, 278, 855 P2d 1088 (1993). To determine whether a statute applies retroactively, we look to the legislative intent, determined in the usual manner of construing the

---

[3] As of the date of DPSST's notice of intent to revoke petitioner's basic corrections certification, that rule was renumbered without any substantive changes as OAR 259-008-0010(6) (Dec 22, 2003).

[4] At that time, ORS 181.640(1)(e) (1997) provided:

"The department shall revoke certification in the manner provided in ORS 181.661 to 181.664."

[5] At that time, ORS 181.662(1) (1997) provided, in part:

"[DPSST] may deny or revoke the certification of any * * * corrections officer * * * based upon a finding that:

"(a) The officer * * * falsified any information submitted on the application for certification or on any documents submitted to [BPSST] or [DPSST].

"(b) The officer * * * has been convicted of a crime in this state or any other jurisdiction."

[6] DPSST later amended its rule on denial and revocation for consistency with the statute. *See* OAR 259-008-0070(1)(a)(C) (Apr 11, 2003) (failure to meet minimum standards as a ground for denial and revocation).

intended meaning of statutes by examining the text in context and, if necessary, the legislative history and other aids to construction. *See Strizver v. Wilsey*, 210 Or App 33, 37-38, 150 P3d 10 (2006), *rev den*, 342 Or 474 (2007) (describing methodology) (citing *State ex rel Juv. Dept. v. Nicholls*, 192 Or App 604, 609-10, 87 P3d 680 (2004)).

There is no text in ORS 181.662(1)(c) explicitly indicating that the legislature intended for DPSST to apply the statute retroactively; along those lines, we find no clear contextual indication that the legislature intended the statute to apply to conduct that occurred before the statute's enactment. Likewise, nothing in the legislative history informs our inquiry. Thus, we rely on the relevant maxims of statutory construction. *See Robert Camel Contracting, Inc. v. Krautscheid*, 205 Or App 498, 502, 134 P3d 1065 (2006) (citing *Vloedman v. Cornell*, 161 Or App 396, 400, 984 P2d 906 (1999)).

 As applied here, the pertinent maxim is that the legislature is presumed to intend that retroactive effect be given to statutes that are "remedial" or "procedural," as opposed to "substantive," in nature. *Id.*; *Vloedman*, 161 Or App at 400. A law is substantive when application of it will "impair existing rights, create new obligations or impose additional duties with respect to past transactions," whereas "remedial" statutes "pertain to or affect a remedy." *Strizver*, 210 Or App at 38 (citations omitted). For the following reasons, we conclude that ORS 181.662(1)(c) is remedial, and therefore, has retroactive effect.

As an initial matter, ORS 181.662(1)(c) is not substantive in nature because it does not "impair existing rights, create new obligations or impose additional duties with respect to past transactions." *Strizver*, 210 Or App at 38. As of the time of petitioner's conduct, DPSST and BPSST were required, by statute, to set minimum standards of moral fitness for its officers. Through OAR 259-008-0010(5) (June 30, 1998), DPSST and BPSST set forth those standards. In applying those standards, DPSST looked at past conduct through a "thorough background investigation." Among the factors that indicated below-standard moral fitness were "[c]onduct involving dishonesty" and "[c]onduct that adversely reflects on his or her fitness to perform as a law

enforcement officer" such as "a history of personal habits off the job [that] would affect the officer's performance on the job [and that] makes the officer both inefficient and otherwise unfit to render effective service because of the agency's and/or public's loss of confidence in the officer's ability to perform competently." OAR 259-008-0010(5) (June 30, 1998). Pursuant to that rule, it is reasonable to conclude that petitioner's conduct—using marijuana over a one-month period and subsequently lying about that use—was forbidden at the time that he engaged in it; furthermore, it is reasonable to conclude that, implicit in its overall authority to manage the certification system, DPSST could enforce its rule by denying or revoking petitioner's certification. In other words, at the time of his conduct, petitioner did not have a substantive right to obtain or retain certification when his conduct fell below the minimum standards set forth by the rule. Thus, ORS 181.662(1)(c) does not affect petitioner's existing rights; it is not substantive in nature.

Rather, in this case, two factors lead us to conclude that ORS 181.662(1)(c) is remedial in nature. First, as explained above, the statutory scheme at the time of petitioner's conduct requiring DPSST to create and maintain minimum standards of moral fitness carried with it an implicit authority to enforce those standards. By enacting ORS 181.662(1)(c), the legislature simply made explicit DPSST's authority to revoke an officer's certification for failure to meet minimum standards of fitness. In effect, the statute "pertain[s] to or affect[s] a remedy" for DPSST by specifically providing an enforcement mechanism by which it may uphold the moral fitness standards that the legislature required it to create.

Second, we observe that the overall statutory scheme governing DPSST reflects an overarching legislative concern for ensuring public and officer safety. That concern is apparent in the legislative requirement for DPSST to improve and maintain minimum moral fitness standards for corrections officers. *See* ORS 181.640(1)(a) (requiring DPSST and BPSST to establish minimum standards of moral fitness "to promote enforcement of law * * * services by improving the competence of public safety personnel"); *see also Bailey v. Board on Police Standards*, 100 Or App 739, 742, 788 P2d

1022 (1990) (recognizing BPSST's mandate to establish minimum moral fitness standards). In light of that legislative concern, it is unlikely that the legislature intended the statute to apply only prospectively, so as to shield any conduct that occurred before the enactment from DPSST's scrutiny. The statutory text makes no such differentiation, and we can find no other support for that suggestion.

Indeed, testimony accompanying the bill indicates that the legislature viewed the statute as a remedial measure. Originating as Senate Bill (SB) 345 (1999), ORS 181.662(1)(c) was enacted along with a series of provisions that were, in large part, "housekeeping" in nature, as a result of the growth of DPSST from its role as the police academy to the agency responsible for establishing standards of fitness for and training "nearly all public safety disciplines." Testimony, Senate Judiciary Committee, SB 345, Feb 3, 1999, Ex D at 1 (statement of DPSST Director Dianne Middle). In her written testimony supporting the bill, Middle said the following about the addition of paragraph (c) to ORS 181.662(1):

> "*[It] states the obvious* that a person will not be granted certification just because they went through training. They must be able to demonstrate satisfaction of minimum standards and the basic levels of proficiency."

*Id.* at 3 (emphasis added). That commentary that the statute "states the obvious" link between an officer's certification with his or her satisfaction of the minimum standards further supports our conclusion that the legislature viewed the statute as a remedial measure, in the sense that the 1999 change both made explicit what had been implicit in DPSST's authority to maintain and promulgate moral fitness standards and advanced the legislature's overarching concern for ensuring public and officer safety.

Hence, we conclude that, to the extent that an application of ORS 181.662(1)(c) to conduct occurring before its enactment can be characterized as retroactive, that application is proper because the statute is remedial in nature and, accordingly, has retroactive effect. DPSST did not err in revoking petitioner's certification under ORS 181.662(1)(c) based on conduct that occurred in 1998 and 1999.

Affirmed.