Argued and submitted September 18, decision of Court of Appeals and order of
Department of Public Safety Standards and Training affirmed December 18, 2008

Paul D. CUFF,
*Petitioner on Review,*

*v.*

DEPARTMENT OF PUBLIC SAFETY
STANDARDS AND TRAINING,
*Respondent on Review.*

(DPSST 114352; CA A132424; SC S055649)

198 P3d 931

Daryl S. Garrettson, of Garrettson, Gallagher, Fenrich and Makler, P.C., Portland, argued the cause and filed the brief for petitioner on review. With him on the brief was Patricia Bridge Urquhart, Portland.

Erin C. Lagesen, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

GILLETTE, J.

## GILLETTE, J.

In this administrative law case, petitioner, a county public safety officer, seeks review of an order of the Department of Public Safety Standards and Training (DPSST) that revoked his certification as a corrections officer on the ground that he failed to meet minimum moral fitness standards. On judicial review, the Court of Appeals affirmed DPSST's action. *Cuff v. Department of Public Safety Standards*, 217 Or App 292, 175 P3d 983 (2007). We allowed review and now affirm the decision of the Court of Appeals.

The facts are not in dispute. Petitioner is a corrections officer for Washington County. At the time of the events that eventually resulted in the revocation of his certification, petitioner was employed in the county's transport division, driving inmates into and out of the county in a commercial-sized bus. In January 1999, petitioner was subjected to a routine drug-screening urinalysis and tested positive for marijuana use. When confronted with the results of the test, petitioner initially denied using illegal drugs. However, during the ensuing investigation, petitioner admitted purchasing marijuana once and then using the drug off duty nearly every day for a month before the test. In March 1999, the county fired petitioner.

Petitioner's union, the Washington County Police Officers' Association, contested petitioner's firing by filing a grievance under the collective bargaining agreement between the union and the county. That collective bargaining agreement required the employer to provide counseling to an employee after a positive drug test and denied the employer the right to discipline the employee unless the employee had previously tested positive for drug use or had refused treatment. The case was arbitrated. The arbitrator agreed with petitioner and ordered that he be reinstated. The county refused to reinstate petitioner and the union then filed a proceeding on petitioner's behalf with the Employment Relations Board (ERB). Before ERB, the county argued that reinstatement would violate public policy. ERB disagreed and ordered the county to reinstate petitioner.

This court ultimately upheld that ERB decision in *Washington Cty. Police Assn. v. Washington Cty.*, 335 Or 198,

63 P3d 1167 (2003). The court rejected the county's argument that ORS 181.662 (1999), the public safety officer certification revocation statute in effect when the county fired petitioner, constituted a clear statement of public policy against the continued certification of public safety officers who have used controlled substances, including marijuana. *Id.* at 206. In so holding, the court observed that whether petitioner could have had his certification as a public safely officer revoked for his conduct was not the issue; rather, the issue was only whether petitioner should be reinstated, and ORS 181.662 (1999) did not speak to that question. *Id.* In any event, the court stated, ORS 181.662 (1999) did not permit revocation of a public safety officer's certification for drug use unless the officer had been convicted of a crime based on such use.[1] *Id.* For those reasons, the court did not agree that ORS 181.662 (1999) defined a clear public policy against the continued certification of a public safety officer who had not been convicted of any offense, much less establish a clear public policy on the separate question of such an officer's reinstatement. *Id.* Based on this court's decision in *Washington Cty.*, the county reinstated petitioner in June 2003.

Meanwhile, in October 1999, the legislature amended the certification revocation statute, adding a provision that permits revocation of a public safety officer's certification on a finding that:

> "The public safety officer or instructor does not meet the applicable minimum standards, minimum training or the terms and conditions established under ORS 181.640(1)(a) to (d)."[2]

ORS 181.622(1)(c). ORS 181.640, in turn, directed (and continues to direct) DPSST and the Board on Public Safety

---

[1] Petitioner had not been charged with or convicted of any crime based on his purchase or use of marijuana.

[2] The relevant subsections of ORS 181.662 were renumbered in 1999, so that the certification revocation provisions at issue now are located at ORS 181.662(1). In addition, ORS 181.662 has since been amended in other ways that do not bear on our analysis in this case. We also note that, shortly after the legislature amended ORS 181.662 to add paragraph (1)(c), BPSST adopted a corresponding change to the administrative rule governing certification revocation, making a public safety officer's failure to meet minimum moral fitness standards a discretionary ground for revoking his or her certification. OAR 259-008-0070(3)(c).

Standards and Training (BPSST) to promulgate rules establishing minimum standards for, among other things, moral fitness.[3] And, pursuant to that directive, BPSST adopted OAR 259-008-0010(6),[4] which provides, in part:

"Moral Fitness (Moral Character). All law enforcement officers must be of good moral fitness.

"(a)   For purposes of this standard, lack of good moral fitness means conduct not restricted to those acts that reflect moral turpitude but rather extending to acts and conduct which would cause a reasonable person to have substantial doubts about the individual's honesty, fairness, respect for the rights of others, or for the laws of the state or the nation."

In January 2004, seven months after the county reinstated petitioner, DPSST notified petitioner that it intended to revoke his certification as a public safety officer on the ground that he failed to meet minimum moral fitness standards under OAR 259-008-0010. In particular, DPSST relied on the facts that petitioner used illegal drugs in December 1998 and January 1999 and that he lied during the investigation into his conduct.

Petitioner requested and was provided an administrative hearing. After the hearing, which was held in December 2004, the Office of Administrative Hearings (OAH) issued a proposed order that would have held that DPSST had not proved that petitioner lied *during* the investigation (although he initially lied to his supervisors), but that petitioner's off-duty drug use in December 1998 and January 1999 demonstrated that petitioner lacked moral fitness, and

---

[3] ORS 181.640(1)(a) provides:

"In accordance with any applicable provision of ORS chapter 183, to promote enforcement of law and fire services by improving the competence of public safety personnel and their support staffs, and in consultation with the agencies for which the Board on Public Safety Standards and Training and Department of Public Safety Standards and Training provide standards, certification, accreditation and training:

"(a) The department shall recommend and the board shall establish by rule reasonable minimum standards of physical, emotional, intellectual and moral fitness for public safety personnel and instructors."

[4] At the time that petitioner committed the drug use that led to his firing in 1999, the regulation was numbered as OAR 259-008-0010(5).

that that lack of moral fitness was a sufficient basis for revoking petitioner's certification. In making those proposed findings, the OAH declined to consider evidence relating to petitioner's conduct and job performance after the period of marijuana use and the ensuing investigation, ruling that evidence of petitioner's later conduct was not relevant to the only issues to be resolved at the hearing, *viz.*, whether petitioner had consumed marijuana in December 1998 and January 1999 and whether he was dishonest during the investigation. The OAH further reasoned that, because the case involved a revocation, petitioner's current fitness was not at issue. Based on the foregoing, the OAH concluded that petitioner's certification should be revoked.

Petitioner filed exceptions to that proposed order, arguing, among other things, that evidence of petitioner's conduct after the period of marijuana use in January 1999 was relevant to the proceeding insofar as the moral fitness standard, properly understood, was an on-going standard of continued fitness. The OAH eventually issued a corrected proposed order, but that order did not address petitioner's concern that the OAH erroneously failed to consider petitioner's conduct after January 1999.

After reviewing the corrected proposed order, DPSST issued a final order in January 2006 revoking petitioner's certification. In that order, DPSST directly addressed petitioner's argument that his conduct after the January 1999 drug use was relevant to whether petitioner lacked moral fitness. DPSST explained that it had considered all the evidence in the record in assessing whether petitioner lacked moral fitness, including petitioner's evidence of his subsequent conduct:

> "Pursuant to OAR 259-008-0010(5) (1999), DPSST determines whether an officer possesses the requisite moral fitness by conducting 'a thorough background check.' Past acts are the only possible basis for that determination. [Petitioner], himself, admitted that his [1998-99] conduct fell below the standard of moral fitness required of a public safety officer. * * *

> "In light of [OAH's] initial evidentiary ruling, and subsequent decision to treat evidence of [petitioner's] current

job performance as an offer of proof, DPSST reviewed and considered th[at] evidence. Even under such an analysis, [petitioner's] current job performance fails to persuade DPSST that [petitioner] no longer lacks moral fitness. [Petitioner] is not able to 'unring the bell' of his past unlawful conduct and judgmental errors by the evidence presented on his behalf during the hearing.

"Contrary to [petitioner's] assertions, persuasive and substantial evidence exists in the record that [petitioner's] behavior may have impacted the public's perception and the agency's confidence in [petitioner's] ability to perform competently. * * * As [one witness] indicated, [petitioner's] substance abuse problem may be the subject of rehabilitation, but rehabilitation would not alter the fact that [petitioner], as a sworn law enforcement officer, repeatedly violated the law by unlawfully purchasing and using controlled substances. Abiding by and upholding the laws which officers enforce is a core value. The core values are reflected in the agency's rules, the law enforcement Code of Ethics, and Washington County's zero-tolerance approach to drugs. * * * These values are reflected in DPSST's standards.

"These factors were sufficient for DPSST and [petitioner's supervisors] to have substantial doubts about [petitioner's] honesty, fairness, respect for the rights of others, or for the laws of the state. These parties concluded that [petitioner's] conduct was prejudicial to the administration of justice in that [petitioner] broke the very laws he had sworn to uphold and that [petitioner's] off-the-job behavior adversely reflected on his fitness to perform as a law enforcement officer. DPSST finds substantial evidence in the record to determine that [petitioner's] unlawful purchase and repeated unlawful use of controlled substances is sufficient, independent of any untruthfulness, to justify revocation of his certifications as a law enforcement officer.

"* * * * *

"DPSST is persuaded that [petitioner's] conduct would cause a reasonable person to have substantial doubts about [petitioner's] respect for the laws of the State of Oregon, given the finding that [petitioner] committed approximately thirty (30) unlawful acts over a period of approximately thirty (30) days. This blatant disrespect for the laws

of Oregon amounts to a lack of good moral fitness, which all corrections officers must possess."

DPSST then revoked petitioner's certification.

Petitioner sought judicial review of DPSST's order by the Court of Appeals. In that court, petitioner raised five assignments of error, only one of which petitioner pursues in this court, *viz.*, that DPSST did not have authority to revoke his certification based on his 1998-99 conduct because the statute and regulation in effect at the time of that conduct did not authorize certification revocation on that basis, and the legislature did not intend ORS 181.662(1)(c) and OAR 259-008-0070(3)(c) (providing that lack of good moral fitness is discretionary basis for denying or revoking certification) to apply retroactively.[5] The Court of Appeals affirmed DPSST's decision to revoke petitioner's certification, concluding that, notwithstanding the fact that the text of ORS 181.662(1)(c) does not indicate that the legislature intended that statute to be retroactive, the statute is "remedial" in nature and, therefore, has retroactive effect. *Cuff*, 217 Or App at 298. For that reason, the Court of Appeals concluded that DPSST did not err in revoking petitioner's certification based on conduct that occurred in 1998 and 1999. *Id.* at 300. As noted, we allowed petitioner's request for review.

We begin our analysis by rejecting the premise of both petitioner's argument and the Court of Appeals' analysis, *viz.*, the assumption that ORS 181.662(1)(c) is "retroactive." As discussed above, ORS 181.662 provides, in part:

"(1)  The Department of Public Safety Standards and Training may * * * revoke the certification, of any * * * public safety officer * * * based upon a finding that:

---

[5] In addition to his argument in this court, petitioner argued in the Court of Appeals that DPSST's reliance on ORS 181.662(1)(c) and OAR 259-008-0070(3)(c) violated his state and federal constitutional rights not to be subject to *ex post facto* laws; that there was not substantial evidence in the record to support DPSST's conclusion that petitioner lacked good moral fitness; that DPSST erred in finding that petitioner failed to meet the minimum standards of moral fitness; and that DPSST's interpretation of its governing statutes and regulations to permit revocation of petitioner's certification based on his drug use created a conflict with the collective bargaining laws of the state and infringed on the exclusive jurisdiction of the Employment Relations Board. The Court of Appeals rejected those arguments without discussion. *Cuff*, 217 Or App at 295 n 2. Petitioner does not challenge that aspect of the Court of Appeals decision in this court.

"* * * * *

"(c)   The public safety officer * * * does not meet the applicable minimum standards, minimum training or the terms and conditions established under ORS 181.640(1)(a) to (d)."

As a matter of simple grammar, the key phrases of those provisions are worded in the present tense. That is, the statute gives DPSST the *present* authority to revoke a public safety officer's certification based on the public safety officer's *present* failure to "meet the applicable minimum standards" established under ORS 181.640(1)(a) to (d). The plain wording of that statute does not support an interpretation that DPSST has authority to revoke a public safety officer's certification because that officer failed to meet minimum standards at some point in the past. ORS 181.662(1)(c) is not, by its terms, retroactive.

■     In addition, the minimum standards for moral fitness that DPSST established by rule under ORS 181.640(1)(a) to (d) are not themselves retroactive. Again, as noted above, OAR 259-008-0010(6)(a) sets out the minimum standard for moral fitness, providing, in part:

"For purposes of this standard, lack of good moral fitness means conduct not restricted to those acts that reflect moral turpitude but rather extending to acts and conduct which would cause a reasonable person to have substantial doubts about the individual's honesty, fairness, respect for the rights of others, or for the laws of the state or the nation."

That regulation also is worded to require consideration of a public safety officer's *present* fitness. By defining conduct demonstrating a lack of good moral fitness to include conduct that "would cause a reasonable person to have substantial doubts" about, among other things, the public safety officer's respect for the law, the focus of OAR 259-008-0010(6)(a) is on an officer's conduct that would cause a reasonable person to have *present* substantial doubts about that officer's fitness. OAR 259-008-0010(6)(a), by its terms, likewise is not retroactive.

The only remaining question thus is whether it somehow was impermissible for DPSST to consider petitioner's December 1998 and January 1999 drug use in evaluating petitioner's present moral fitness. In considering the propriety of an agency's action in a contested case,[6] this court examines whether the agency acted "[o]utside the range of discretion delegated to the agency by law" or "[o]therwise in violation of a constitutional or statutory provision." ORS 183.482(8)(b)(A) and (C).

We first observe that it is difficult to conceive of any viable way to evaluate a person's present moral fitness without considering the person's past conduct. A person's "past actions are relevant to his present character and fitness." *In re Beers*, 339 Or 215, 224, 118 P3d 784 (2005) (bar admission case; citing *In re Fine*, 303 Or 314, 322, 736 P2d 183 (1987) (person's past acts bear on his present candor, credibility, and trustworthiness)). Moreover, nothing in the text of either ORS 181.662(1)(c) or OAR 259-008-0010(6) expressly limits in any way the temporal scope of the evidence that DPSST may consider in evaluating an officer's present fitness. It is indisputable that, had petitioner purchased and used illegal drugs every day for a month in the more recent past, that conduct would be sufficient grounds for revocation of his certification.

In addition, context demonstrates that DPSST is expected to consider *all* relevant evidence in making its determination. ORS 181.662(1) requires DPSST to provide notice and a hearing under ORS 181.661 in the event it decides to deny, suspend, or revoke an officer's certification. ORS 181.661, in turn, requires such hearings to be conducted in accordance with ORS 183.415 and ORS 183.417, that is, in accordance with the standards for contested case hearings. In a contested case hearing, "[i]rrelevant, immaterial or unduly repetitive evidence shall be excluded," but "[a]ll other evidence of a type commonly relied upon by reasonably prudent

---

[6] Under ORS 181.662(1), when DPSST determines that denial, suspension, or revocation of a public safety officer's certification is appropriate, DPSST is required to provide the officer with notice and an opportunity for a hearing "consistent with the provisions of ORS 181.661." ORS 181.661, in turn, provides that the notice and opportunity for a hearing be provided "in accordance with ORS 183.415 and 183.417," which set out procedures for notice and hearings in contested cases.

persons in conduct of their serious affairs shall be admissible." ORS 183.450(1). Although it might be argued that evidence of petitioner's purchase and use of illegal drugs in December 1998 and January 1999 is *less* relevant than evidence of more recent conduct would be, we cannot conclude that it is *irrelevant* to DPSST's determination of petitioner's present moral fitness. That is, evidence of petitioner's past conduct is "of a type commonly relied upon by reasonably prudent persons in conduct of their serious affairs" and, therefore, DPSST acted within its discretion in relying on it.

Petitioner, nonetheless, insists that it is impermissibly "retroactive" to consider evidence of conduct that was not grounds for revocation when he committed it. That argument might be persuasive if petitioner plausibly could contend that he did not have any reason to believe that his conduct in purchasing and using illegal drugs in December 1998 and January 1999 fell below minimum standards for public safety officers at the time that he committed it. Petitioner cannot do so, however. As DPSST noted in its order revoking petitioner's certification, petitioner himself admitted that that conduct did not meet minimum fitness standards for a law enforcement officer at the time that it occurred.

■    Nothing in the text or context of ORS 181.662(1)(c) or OAR 259-008-0010(6) precludes DPSST from considering, in a certification revocation proceeding, any and all conduct that bears on petitioner's current moral fitness as a law enforcement officer, whenever that conduct occurred. That is the only issue before us. We therefore cannot say that DPSST violated any provision of law in considering evidence of petitioner's December 1998 and January 1999 drug use. It follows that DPSST's order must be affirmed.

The decision of the Court of Appeals and the order of the Department of Public Safety Standards and Training are affirmed.