Argued and submitted January 15, reversed and remanded August 20, 2014

Reyes ROMAYOR,
*Petitioner,*

*v.*

DEPARTMENT OF PUBLIC SAFETY STANDARDS
AND TRAINING,
*Respondent.*

Department of Public Safety Standards and Training
35861; A150817

339 P3d 442

Jennifer K. Chapman argued the cause for petitioner. On the opening brief was Jason M. Weyand. On the reply brief was Mariko A. Yoshioka.

Judy C. Lucas, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

Petitioner seeks judicial review of a final order of the Department of Public Safety Standards and Training ("DPSST" or "the department") that revoked the certificate that petitioner is required to maintain in order to continue to work as a corrections officer. Both a policy committee of the department and the Board of Public Safety Standards and Training ("the board") voted to revoke that certification on the ground that petitioner had violated the department's moral-fitness standards. The proceeding was commenced after a series of events involving petitioner, most notably a 2006 bar fight. Although petitioner was not a fight participant, he was arrested and charged with crimes relating to his interference with the on-scene police investigation that resulted. Petitioner contested the proposed revocation before an administrative law judge (ALJ) from the Office of Administrative Hearings. *See* ORS 183.635. The ALJ issued a proposed order, which made certain factual findings before concluding that petitioner had not violated the department's moral-fitness standards. The department did not accept that proposed order, and instead issued a final order that revoked petitioner's certification. Petitioner is before us challenging that final order. Because we agree that the department applied the wrong moral-fitness rule, we reverse and remand on that basis and do not address petitioner's other assignments of error, which include challenges to certain of the department's factual findings.

ORS 181.640 requires the board and the department to establish certification requirements for "public safety personnel."[1] As relevant here, "The department shall recommend and the board shall establish by rule reasonable minimum standards of physical, emotional, intellectual and moral fitness for public safety personnel * * *." ORS 181.640(1)(a). The department is authorized to revoke the certification of any public safety officer if, after a hearing, it finds that "[t]he public safety officer * * * does not meet the applicable minimum standards, minimum training or the terms and conditions established under ORS 181.640(1)(a) to (d)." ORS 181.662(1)(c). As discussed below, the board

---

[1] That term includes corrections officers. ORS 181.610(17).

has, over the years, promulgated a series of rules regarding "moral fitness."

In October 2008, the department sent petitioner notice that it intended to revoke his basic certification.[2] As relevant here, the notice proposed to do so on the ground that petitioner did not meet the department's moral-fitness standards. At the time of that notice, the moral-fitness rules provided:

"Moral Fitness (Moral Character). All law enforcement officers must be of good moral fitness.

"(a)   For purposes of this standard, lack of good moral fitness means conduct not restricted to those acts that reflect moral turpitude but rather extending to acts and conduct which would cause a reasonable person to have substantial doubts about the individual's honesty, fairness, respect for the rights of others, or for the laws of the state or the nation.

"(b)   The following are indicators of a lack of good moral fitness;

"(A)   Illegal conduct involving moral turpitude;

"(B)   Conduct involving dishonesty, fraud, deceit, or misrepresentation;

"(C)   Intentional deception or fraud or attempted deception or fraud in any application, examination, or other document for securing certification or eligibility for certification;

"(D)   Conduct that is prejudicial to the administration of justice;

"(E)   Conduct that adversely reflects on his or her fitness to perform as a law enforcement officer. Examples include but are not limited to: Intoxication while on duty, untruthfulness, unauthorized absences from duty not involving extenuating circumstances, or a history of personal habits off the job which would affect the officer's performance on the job which makes the officer both inefficient and otherwise unfit to render effective service because of

---

[2] The notice also proposed to deny his then-pending application for an "intermediate" certification. That denial is no longer at issue.

the agency's and/or public's loss of confidence in the officer's ability to perform competently."

OAR 259-008-0010(6) (4/15/08).

Petitioner challenged the proposed revocation at a contested hearing before an ALJ. By the time of that 2010 hearing, the board had substantially overhauled its moral-fitness regulations. As of January 1, 2009, the relevant rule provided:

"Moral Fitness (Professional Fitness). All law enforcement officers must be of good moral fitness.

"(a)   For purposes of this standard, lack of good moral fitness includes, but is not limited to:

"(A)   Mandatory disqualifying misconduct as described in OAR 259-008-0070(3); or

"(B)   Discretionary   disqualifying   misconduct   as described in OAR 259-008-0070(4)."

OAR 259-008-0010(6) (1/1/09). There is no suggestion that any of the mandatory disqualifying conduct listed in OAR 259-008-0070(3) (1/1/09) is implicated here. Subsection (4) identifies discretionary disqualifying conduct:

"(a)   The Department may deny or revoke the certification of any public safety professional *** after written notice, and a hearing, if requested, based upon a finding that:

"(A)   [The public safety professional falsified information on an application for certification or on certain documents];

"(B)   The public safety professional *** fails to meet the applicable minimum standards, minimum training or the terms and conditions established under ORS 181.640;

"(C)   [The public safety professional *** has been convicted of one of a list of crimes]; or,

"(D)   [The public safety professional failed to attend certain required mental health consultations].

"(b)   For purposes of this rule, discretionary disqualifying misconduct includes misconduct falling within the following categories:

"(A)   Category I: Dishonesty: Includes untruthfulness, dishonesty by admission or omission, deception, misrepresentation, falsification; * * *.

"(B)   Category II: Disregard for the Rights of Others: Includes violating the constitutional or civil rights of others, and conduct demonstrating a disregard for the principles of fairness, respect for the rights of others, protecting vulnerable persons, and the fundamental duty to protect and serve the public. * * *

"(C)   Category III: Misuse of Authority: Includes abuse of public trust, obtaining a benefit, avoidance of detriment, or harming another, and abuses under the color of office. * * *

"(D)   Category IV: Gross Misconduct: Means an act or failure to act that creates a danger or risk to persons, property, or to the efficient operation of the agency, recognizable as a gross deviation from the standard of care that a reasonable public safety professional * * * would observe in a similar circumstance; * * *.

"(E)   Category V: Misconduct: Misconduct includes conduct that violates the law, practices or standards generally followed in the Oregon public safety profession. * * *

"(F)   Category VI: Insubordination: Includes a refusal by a public safety professional or instructor to comply with a rule or order, where the order was reasonably related to the orderly, efficient, or safe operation of the agency, and where the public safety professional's * * * refusal to comply with the rule or order constitutes a substantial breach of that person's duties. * * *

"(c)   For discretionary disqualifying misconduct under (a)(A) or (B), the applicable category will be determined based on the facts of each case. For discretionary disqualifying misconduct under (a)(C), the following list identifies the applicable category for each discretionary offense:

"[categorized list of crimes]"

OAR 259-008-0070 (1/1/09). The revised rules were in effect by the time of the hearing before the ALJ and at the time the ALJ issued the proposed order.[3] That order proposed

---

[3] The rule has been amended several times since January 1, 2009. The current rule is substantively similar to the 2009 version cited here.

to reverse the department's notice of intent to revoke petitioner's certificate. As relevant here, the order stated that the only pertinent issue was whether petitioner had been "dishonest" with law enforcement during the January 2006 incident that led to his arrest. After making a number of factual findings about that incident, the ALJ applied the January 1, 2009, amended version of the moral-fitness rules and concluded that "the Department has failed to prove that Petitioner was dishonest." The ALJ issued that proposed order in July 2010.

The department did not enter the ALJ's order. Instead, after an unexplained delay of approximately 16 months, it issued an amended proposed order that sought to revoke petitioner's certification. After petitioner filed a number of exceptions to that proposed order, the department issued the final order revoking petitioner's certification that is at issue in this petition for judicial review. As relevant to our discussion here, the department's final order concluded that the ALJ had applied the wrong legal standard by improperly reducing the issue to whether petitioner had been "dishonest" during the 2006 incident. The department stated that the issue was broader, *i.e.*, whether petitioner "fail[ed] to meet the moral fitness standards." (Footnote omitted.) The department then proceeded to assess petitioner's moral fitness by reference to the previous version of the administrative regulations, that is, by applying OAR 259-008-0010 (4/15/08), the moral-fitness standard that was in effect when the department sent its notice of intent to revoke. In explaining why it was appropriate to apply its former rules, the department stated, by way of a footnote in the final order:

> "The agency modifies the ALJ's opinion section because it erroneously applied the current version of the agency's rule, rather than the applicable version of the rule. As a result of that error, the ALJ misstated the legal issue. The agency substitutes reasoning and a conclusion under the pertinent, former version of the rule."

Petitioner assigns error to the department's decision to apply the former version of its moral-fitness rules. The department asserts that it was appropriate to apply the version of the rules that was in effect at the time when

petitioner allegedly engaged in the misconduct and that was cited in the notice of intent to revoke. The correctness of that assertion is a question of law that we review for legal error. ORS 183.482(8)(a); *Cuff v. Department of Public Safety Standards*, 217 Or App 292, 295, 175 P3d 983 (2007), *aff'd*, 345 Or 462, 198 P3d 931 (2008). For the following reasons, we conclude that the department erred by applying the former version of the rule.

Both parties point us to *Delehant v. Board on Police Standards*, 317 Or 273, 855 P2d 1088 (1993). There, the board (then referred to by its former acronym, "BPST") denied a petitioner's application for a basic law-enforcement certificate based on his out-of-state misdemeanor convictions.[4] The petitioner contested that denial. The board, pursuant to its statutory authority to deny the certification of a police officer upon a finding that the officer had been convicted of any "crime," ORS 181.662(1)(b) (1991), had promulgated a rule, which, at the time of the petitioner's hearing, provided that the board "may deny or revoke the certification of any officer" based upon finding that the officer had been convicted of any "felony." *Delehant*, 317 Or at 276 (internal quotation marks omitted). "Thus, at the time of [the] petitioner's hearing, although the statute authorized denial of certification for conviction of any 'crime,' BPST had limited itself by its rule to deny certification only on the basis of conviction of a felony." *Id.* at 277. While the petitioner's case was pending before it, the board amended the rule by broadening it to mirror the statute, *viz.*, to permit denying certification to any police officer who had been convicted of a "crime." The board relied on that new rule to deny the petitioner's certification.

Before the Oregon Supreme Court, the petitioner argued that application of the new rule constituted a retroactive application. The court observed that "[r]etroactive application of a rule is not automatically impermissible * * *. The question is one of intent of the promulgating agency or legislature." *Id.* at 278. The court then noted that, although nothing in the applicable regulation reflected an intent on the part of the department to apply the rule retroactively,

---

[4] Under ORS 181.662(1)(b) (1991), the board held the authority to revoke a certification. That authority now resides with the department. ORS 181.662(1)(b).

"the procedural history of this case clearly establishes such an intent. *Id*. BPST promulgated the rule during the progress of this case, then applied the rule to this case. If that application of the rule was 'retroactive,' as petitioner claims, then BPST unquestionably intended the rule to apply retroactively." The court also cited *Trebesch v. Employment Division*, 300 Or 264, 270, 710 P2d 136 (1985), for the proposition that an "agency may decide policy in the course of deciding a contested case and apply newly established policy to the case before it." *Delehant*, 317 Or at 279. The court concluded that, because the board intended the regulation to apply retroactively, the board did not err in applying its new rule to the case before it.

The department here seeks the opposite result from the one that the board sought in *Delehant*, for it seeks to apply the superseded rule that existed at the outset of the contested-case process rather than the rule that it promulgated prior to the ALJ hearing. As noted, the legislature has tasked the department and the board with developing moral-fitness standards for Oregon public-safety officers, ORS 181.640(1)(a), and has also, in ORS 181.662, granted the department authority to revoke those certifications for failure to meet those standards:

"(1)   The Department of Public Safety Standards and Training may * * * revoke the certification, of any public safety officer * * * based upon a finding that:

"* * * * *

"(c)   The public safety officer * * * does not meet the applicable minimum standards, minimum training or the terms and conditions established under ORS 181.640(1)(a) to (d)."

With regard to those provisions, the Supreme Court has noted:

"As a matter of simple grammar, the key phrases of those provisions are worded in the present tense. That is, the statute gives DPSST the *present* authority to revoke a public safety officer's certification based on the public safety officer's *present* failure to 'meet the applicable minimum standards' established under ORS 181.640(1)(a) to (d). The plain wording of that statute *does not support an interpretation that DPSST has authority to revoke a public safety*

*officer's certification because that officer failed to meet minimum standards at some point in the past.* ORS 181.662(1)(c) is not, by its terms, retroactive."

*Cuff,* 345 Or at 470 (third emphasis added; first and second in original).

The difficulty with the department's position in this case is that, by the very act of adopting the new and substantively different rules, the department itself indicated that the old rules no longer stated DPSST's own *present* understanding of moral fitness. The legislature has delegated the authority to define what constitutes the standard of moral fitness. *See* ORS 181.640(1)(a) ("The department shall recommend and the board shall establish by rule reasonable minimum standards of * * * moral fitness[.]"). Thus, the department is free to recommend—and the board to promulgate—new rules to reflect evolving notions about what minimum level of moral fitness is appropriate to demand of those who seek to obtain or maintain certification. As noted in *Cuff,* when the department seeks to revoke or deny certification on moral-fitness grounds, the question is—as a matter of *statutory* interpretation—whether the public-safety officer *presently* meets the minimum moral-fitness requirements. 345 Or at 470.

In this case, the department alleged in October 2008 that petitioner did not meet the moral-fitness standard of OAR 259-008-0010(6) (4/15/08). As of January 1, 2009, however, a finding that petitioner had violated that former standard would not be equivalent to a finding that he was presently morally unfit. It thus makes scant sense for the department to suggest, as it does, that the relevant question before it when it was reviewing the ALJ's decision was whether petitioner *presently* met a *past* standard.[5] The

---

[5] Even assuming that the department could amend its substantive fitness standards in a manner that confined application to future cases, we would reach the same conclusion. That is because we would not be convinced of the department's intention to apply new rules only to prospective cases when the only stated reasoning on the question is the conclusory statement—in a final contested-case order—that the old moral-fitness standard is the "pertinent" one. Additionally, we note that petitioner does not contend that the application of the amended moral-fitness standards in his case ran afoul of any potentially applicable constitutional protections; to the contrary, he advocates for the application of those standards.

department's finding that petitioner violated the minimum standards of OAR 259-008-0010(6) (4/15/08) is necessarily—at best—a finding that he did not meet minimum standards at some point in the past, because the standard that the department held him to only existed in the past. We conclude that we must remand this case to the department in order for it to assess petitioner's present moral fitness under the correct—*viz.*, present—version of its substantive moral-fitness standards.[6]

That conclusion obviates any need for us to address petitioner's challenges to certain of the department's factual findings, which, he contends, inappropriately differed from the ALJ's findings. We caution that our decision not to take up those challenges should not, on remand, be construed as this court's endorsement of any one view of the facts. Rather, given that the department's analysis, including its findings—and, potentially, its disposition—following reconsideration on remand may differ very substantially from those now presented for our review, we decline, as a prudential and practical matter, to address petitioner's other challenges.

Reversed and remanded.

---

[6] There is no argument from the department that the ultimate decision to revoke petitioner's certification would have been the same under either version of the regulations.