Argued and submitted August 17, affirmed December 20, 2006, petition for review
denied March 7, 2007 (342 Or 474)

Richard STRIZVER
and Susan Strizver,
*Appellants,*

*v.*

Jeff S. WILSEY
and Terri Wilsey,
*Respondents.*

04CV-3931CC; A127761

150 P3d 10

Joel S. DeVore argued the cause for appellants. With him on the briefs was Luvaas Cobb.

Brian R. Talcott argued the cause for respondents. With him on the brief were Dunn Carney Allen Higgins & Tongue LLP, and Randy C. Rubin and Christopher W. Peterman.

Steve Norman and The Gary Law Group filed the brief *amicus curiae* for Oregon Home Builders Association.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Leonard, Judge pro tempore.

HASELTON, P. J.

## HASELTON, P. J.

Plaintiffs appeal from a judgment dismissing without prejudice this action for breach of a residential construction contract. Defendants moved, pursuant to ORS 701.595, to dismiss the action on the ground that plaintiffs had not complied with ORS 701.565 and ORS 701.575, which require homeowners to take certain steps to allow remediation of construction problems before bringing suit against residential contractors. The trial court, in granting dismissal, rejected plaintiffs' arguments that ORS 701.565, ORS 701.575, and ORS 701.595 are inapplicable because the parties entered into and performed their contract before the effective date of those statutes. We affirm.

The sole question before us is whether defendants were entitled to dismissal of plaintiffs' complaint as a matter of law. We review the grant of a motion to dismiss under ORCP 21 for failure to state a claim as a matter of law. *Granewich v. Harding*, 329 Or 47, 51, 985 P2d 788 (1999). We assume the truth of all allegations in the pleading and view the allegations, as well as all reasonable inferences, in the light most favorable to the nonmoving party. *Id.*

In their complaint filed in September 2004, plaintiffs alleged that, in April 2003, plaintiffs and defendants had entered into a contract by which defendants agreed to construct a house for plaintiffs. The contract contained a provision that required plaintiffs to notify defendants of any claims for defective work within one year of the date of completion and also required any claim arising from the contract to be brought within one year of the date of completion.

Defendants built the house, and plaintiffs moved into it in September 2003. Thereafter, plaintiffs discovered that the house had not been built to specifications in numerous respects and that a number of defects existed. In the fall of 2003, plaintiffs notified defendants of the defects, pursuant to the contract provision regarding notice of defects, but received no response.

On January 1, 2004, ORS 701.560 to 701.595 went into effect. Or Laws 2003, ch 660, §§ 1-9. As described more

fully below, those statutes imposed new requirements governing the prosecution of complaints by homeowners against residential contractors, subcontractors, and suppliers. As particularly pertinent here, ORS 701.595 provides:

> "If an owner compels arbitration or commences a court action against any contractor, subcontractor or supplier to assert a claim arising out of or related to the construction, alteration or repair of a residence located in this state and the owner has not followed the procedure set forth in ORS 701.565 and 701.575, the arbitrator or court must dismiss the arbitration or action without prejudice. The owner may not commence a new arbitration or action unless the owner follows the procedure set forth in ORS 701.565 and 701.575."

In September 2004, nine months after ORS 701.560 to 701.595 became effective, plaintiffs filed this action. In their complaint, plaintiffs alleged that their "home was not constructed in a workman like manner" in 51 particulars and sought damages in the amount of $30,000, as well as attorney fees and costs.

Defendants moved to dismiss, arguing that, because plaintiffs had failed to comply with the newly enacted provisions of ORS 701.565 and ORS 701.575 before initiating this action, the action must be dismissed pursuant to ORS 701.595. Plaintiffs opposed that motion, contending, in part, that the requirements imposed by those statutes did not apply retroactively to this dispute because the contract had been entered into and performed before the statutes' effective date. The trial court dismissed the complaint without prejudice and awarded defendants attorney fees and costs.

On appeal, plaintiffs argue that the trial court impermissibly applied ORS 701.565 to 701.595 to them retroactively. They reiterate that not only had the parties entered into their contract before the statutes' effective date, but also that the house had been built and the defects discovered before that legislation went into effect. Plaintiffs contend that there is no clear indication that the legislature intended the statutory scheme to be applied retroactively and, consequently, we must assume that the legislature intended that the statutory scheme be applied prospectively

only. *See, e.g., Black v. Arizala*, 337 Or 250, 271, 95 P3d 1109 (2004).

Defendants respond that the operative statutes unambiguously apply to any *action* against a contractor that is commenced after their effective date. In a related sense, defendants suggest that there is no retroactive application here because the statutes are being applied to an action that was commenced after the effective date of the legislation. Finally, and alternatively, defendants contend that, even if the application of the statutes on these facts could be deemed to be "retroactive," the statutory scheme is remedial, not substantive, in nature and, thus, is presumed to apply retroactively.[1]

Determining how and when new legislation is to be applied is, like all other matters of statutory construction, an exercise in discerning the legislature's intent. Thus, our starting point is the text, read in context. In *State ex rel Juv. Dept. v. Nicholls*, 192 Or App 604, 609-10, 87 P3d 680 (2004), we described the methodology as follows:

"[W]e look first to text and context and, in the absence of an express retroactivity clause, we consider such textual cues as verb tense and other grammatical choices that might suggest what the legislature had in mind. [*State v. Lanig*, 154 Or App 665, 671-73, 963 P2d 58 (1998)]; *Newell v. Weston*, 150 Or App 562, 569, 946 P2d 691 (1997), *rev den*, 327 Or 317 (1998). We also consider whether the legislature, elsewhere in the same bill, included any express retroactivity provisions, a fact that is not necessarily dispositive but can be telling. *Ritcherson v. State of Oregon*, 131 Or App 183, 186, 884 P2d 554 (1994), *rev den*, 320 Or 507 (1995).

"If text and context are inconclusive, we next consider legislative history. *Lanig*, 154 Or App at 670. Not surprisingly, when a statute lacks an express retroactivity clause, the legislative record is typically silent and of no assistance. The analysis therefore often moves past that step in short

---

[1] *Amicus curiae* Oregon Home Builders Association also argues that the provisions of ORS 701.560 to 701.595 apply to this dispute, relying primarily on the legislative history of those provisions. Because we resolve the question presented here based on the text and context of the provisions, we do not consider the legislative history.

order and on to maxims of construction. *See, e.g., Rhodes v. Eckelman*, 302 Or 245, 248, 728 P2d 527 (1986) * * *. In effect, maxims are rules or aids of construction that assist us in determining probable legislative intent when it is impossible to discern from a statute itself whether the legislature intended it to apply retroactively. *Whipple v. Howser*, 291 Or 475, 481, 632 P2d 782 (1981).

"The maxims that apply in a particular instance depend in part on the substance of the enactment. *See, e.g., Ritcherson*, 131 Or App at 187 (applying special rules of construction to an amendment of a statute of limitations provision). If, for example, given a particular enactment's substance, retroactive application would give rise to a serious concern as to the provision's constitutionality, we avoid that construction. *Lanig*, 154 Or App at 674. Similarly, if retroactive application would lead to an anomalous or strained outcome, we do not assume in the face of linguistic and historical silence that the legislature intended that outcome. *Rhodes*, 302 Or at 249; *State v. George*, 127 Or App 581, 585-86, 873 P2d 468 (1994). But most often we are left to examine whether a provision is 'remedial' versus 'substantive' in nature. If it is remedial, it presumptively applies retroactively; if it is substantive, it presumptively applies prospectively only. *See, e.g., Joseph v. Lowery*, 261 Or 545, 548-49, 495 P2d 273 (1972) * * *. In determining whether a particular enactment is remedial or substantive, we avoid invoking the terms as mere labels and strive instead to examine meaningfully the substance of the legislation. *Joseph*, 261 Or at 548-49; *Newell*, 150 Or App at 568-69."

(Some citations omitted.) The basic test for whether a law is "substantive" concerns whether application of it will " 'impair existing rights, create new obligations or impose additional duties with respect to past transactions * * *.' " *Joseph*, 261 Or at 547 (quoting *Kempf v. Carpenters and Joiners Union*, 229 Or 337, 343, 367 P2d 436 (1961)). "Remedial" statutes, by contrast, are those "which pertain to or affect a remedy, as distinguished from those which affect or modify a substantive right or duty." *Perkins v. Willamette Industries*, 273 Or 566, 571 n 1, 542 P2d 473 (1975).

Pursuant to the methodology set forth in *Nicholls*, we turn first to the text in context. We summarize and quote these statutes extensively, as they were all enacted together

within the same piece of legislation in 2003. Or Laws 2003, ch 660, §§ 1-9. ORS 701.560 includes basic definitions, such as "contractor," "owner," and "defect," none of which are at issue here. That is, the parties do not dispute that this *type* of dispute is covered under the relevant definitions. As pertinent here, ORS 701.565(1) provides:

> "An owner may not compel arbitration or commence a court action against a contractor, subcontractor or supplier to assert a claim arising out of or related to any defect in the construction, alteration or repair of a residence * * * unless the owner has sent that contractor, subcontractor or supplier a notice of defect as provided in this section and has complied with ORS 701.575."

The owner must send the statutory "notice of defect" by registered mail, ORS 701.565(2), and that notice must include specified information, including a description of "[e]ach defect," "[t]he remediation the owner believes is necessary," and "[a]ny incidental damage not curable by remediation[.]" ORS 701.565(3)(d).

ORS 701.570 contains provisions for those who receive such notice to give secondary notice to subcontractors and suppliers that may be responsible for alleged defects, for the contractor providing a written response to the owner, and for inspections of the premises. It also provides specific time lines: A contractor, subcontractor, or supplier has 14 days after receiving notice of a defect to make a request to conduct a visual examination of the residence and an additional 14 days to perform an inspection, ORS 701.570(2), (3); in all events, the contractor, subcontractor, or supplier is to send a written response to the owner not later than 90 days after receipt of the notice, ORS 701.570(4).

ORS 701.575 requires an owner who has given notice as required in ORS 701.565 to allow for the specified examinations and inspections. ORS 701.580 prescribes how offers of remediation or monetary damages may be accepted or rejected, and specifies a 30-day time line in which an owner may accept an offer of remediation or monetary compensation. ORS 701.585 provides, in part, that, if an owner gives notice of defect as specified in ORS 701.565, "the time for the owner to commence the action shall be extended" for

specified lengths of time, depending on various circumstances, including whether the contractor makes a written offer to perform remediation or to pay compensation or whether remediation was attempted.

ORS 701.590 provides:

"(1)  *A contractor shall deliver a notice of the procedure contained in ORS 701.565 to 701.580 to an owner along with the consumer notification form required to be delivered to an owner under ORS 701.055(13).* The notice must be conspicuous and may be included as part of the underlying contract.

"(2)  The notice required by subsection (1) of this section must be in substantially the following form:

"_____

"OREGON LAW CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY COMMENCE ARBITRATION OR A COURT ACTION AGAINST ANY CONTRACTOR, SUBCONTRACTOR OR SUPPLIER FOR CONSTRUCTION DEFECTS. BEFORE YOU COMMENCE ARBITRATION OR A COURT ACTION YOU MUST DELIVER A WRITTEN NOTICE OF ANY CONDITIONS YOU ALLEGE ARE DEFECTIVE TO THE CONTRACTOR, SUBCONTRACTOR OR SUPPLIER YOU BELIEVE IS RESPONSIBLE FOR THE ALLEGED DEFECT AND PROVIDE THE CONTRACTOR, SUB-CONTRACTOR OR SUPPLIER THE OPPORTUNITY TO MAKE AN OFFER TO REPAIR OR PAY FOR THE DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER MADE BY THE CONTRACTOR, SUB-CONTRACTOR OR SUPPLIER. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER STATE LAW. FAILURE TO MEET THOSE DEADLINES OR FOLLOW THOSE PROCEDURES WILL AFFECT YOUR ABILITY TO COMMENCE ARBITRATION OR A COURT ACTION."

(Emphasis added.)

Finally, ORS 701.595 provides:

"*If an owner compels arbitration or commences a court action against any contractor,* subcontractor or supplier to assert a claim arising out of or related to the construction,

alteration or repair of a residence located in this state *and the owner has not followed the procedure set forth in ORS 701.565 and 701.575, the arbitrator or court must dismiss the arbitration or action without prejudice.* The owner may not commence a new arbitration or action unless the owner follows the procedure set forth in ORS 701.565 and 701.575."

(Emphasis added.)

Here, plaintiffs note, and emphasize, that defendants did not give plaintiffs the threshold notice prescribed by ORS 701.590—which is not surprising given that that statute was not yet in effect either when the parties entered into the contract or when defendants performed under the contract. Plaintiffs assert that, "[f]rom a chronological perspective, the new legislative scheme begins with a requirement that the contractor must provide the owner with an added notice that describes the new scheme for responding to construction defects." Plaintiffs observe that where, as here, the parties executed their contract long before the new statutory scheme became effective, it would have been impossible for defendants to comply with that threshold notice requirement. Thus, plaintiffs reason, because ORS 701.560 to 701.595 must be viewed and construed as an integrated whole, the legislature must have intended that the entire statutory scheme, including ORS 701.565, ORS 701.575, and ORS 701.595, would apply only to actions in which the underlying construction contract was entered into after January 1, 2004. Plaintiffs further emphasize that such a construction would give effect to contractual notice provisions—like the ones in the parties' contract here—that were negotiated and agreed to before ORS 701.560 to 701.595 became effective. In that regard, plaintiffs assert, and defendants do not dispute, that plaintiffs did, in fact, comply with the contractual provisions relating to notice of defects and commencement of this action.

Defendants respond that application of the new legislation to this dispute does not constitute "retroactive" application. They note that the operative language of ORS 701.595 indicates that the new legislation applies when "an owner * * * *commences a court action* against any contractor * * *

assert[ing] a claim arising out of or related to the construction * * * of a residence." (Emphasis added.) Thus, defendants reason, the new legislation applies to *all* court actions commenced after January 1, 2004, regardless of when the underlying contract was entered into or performed. Finally, and alternatively, defendants contend that, even if the application of the statute in these circumstances could somehow be deemed to be "retroactive," the statutory scheme is remedial, and not substantive, in nature and, thus, is presumed to apply retroactively. *See, e.g., Nicholls,* 192 Or App at 610 (if a statute is remedial, it presumptively applies retroactively; if it is substantive, it presumptively applies prospectively).

There is, as plaintiffs note, no express retroactivity clause associated with the 2003 legislation. But, as defendants contend, the text of ORS 701.595, which went into effect January 1, 2004, indicates that it applies when "an owner * * * *commences* a court action," and specifies what is to occur if "the owner *has not followed*" certain procedures set forth in the 2003 legislation regarding notice of defects and opportunities for remediation. The present-tense "commences" indicates a legislative intent that the enactment would apply any time an owner "commences" an action after the effective date of the act.

Were that the only provision, the analysis would be relatively straightforward. But the "has not followed" language is somewhat more problematic, in that it provides that, before an owner "commences" an action, the owner must previously have followed certain procedures that also went into effect January 1, 2004. The legislature hardly could have expected an owner to have already followed those procedures before those procedures were enacted. That is, the legislature would not have expected an owner who commenced an action on January 2, 2004, to have already followed the notice and remediation procedures set forth in statutes that went into effect only one day earlier. And, in fact, given the time lines set forth in ORS 701.570 and ORS 701.575 for a contractor to respond to notice, it simply would be impossible for an owner who wished to bring an action against a contractor to fully comply with the statutory requirements and still initiate the action in January 2004.

Nevertheless, application of the new statutory scheme would not preclude the prosecution of claims based on contracts entered into before January 1, 2004, including claims based on conduct occurring before that date. Rather, it merely imposes procedural requirements before such an action may be pursued. That is, if the owner was unable to comply previously because the statutory requirements did not yet exist, the owner must comply now—which may result either in some delay in the commencement of the litigation or, if the contractor is responsive, in remediation or compensation, avoiding the need for litigation. In that regard, we note that ORS 701.595 provides that any dismissal pursuant to that statute for failure to give the requisite notice or opportunity to remediate shall be a dismissal "without prejudice."

Further, and significantly, nothing in the statutory scheme states that only owners who have received preliminary notice from contractors pursuant to ORS 701.590 can bring an action. That is, *receipt* of such notice is not required for *plaintiffs* to bring actions. Rather, under ORS 701.595, the action is precluded if the plaintiff owner has not "followed the procedure set forth in ORS 701.565 and 701.575." Thus, a defendant contractor's threshold default under ORS 701.590 is not preclusive of a plaintiff owner's ability to prosecute an action.

We conclude that the text, viewed in context, is unambiguous as to the proper application of the statutory scheme in the circumstances presented here: ORS 701.595 went into effect on January 1, 2004, before commencement of this action. By its own terms, that statute applies when an owner "commences a court action." Nothing in the text of ORS 701.595, or in the broader context of ORS 701.560 to 701.590, which were enacted as part of the same legislation, suggests that the legislature did not intend ORS 701.595 to apply to all court actions involving this type of dispute commenced after the effective date of the legislation. Rather, as we have explained, the statutory scheme, while applying without qualification upon the commencement of any court action, includes mechanisms by which plaintiff owners in the same position as the present plaintiffs can prosecute their claims without prejudice after satisfying the statute's notice and opportunity to remediate requirements.

We note, finally, that our construction of ORS 701.595 comports with the analysis and result in *Mahana v. Miller*, 281 Or 77, 573 P2d 1238 (1978). In *Mahana*, the question concerned the proper application of an amended version of ORS 701.065. Before the critical amendment in 1975, a builder had no right to sue for breach of a construction contract if the builder was not registered with the Builders Board at the time the contract was formed; after the amendment, the statute permitted a builder to sue for breach of a construction contract so long as the builder was registered at the time that the builder filed a lien or commenced an action. *See Mahana*, 281 Or at 79. In *Mahana*, the contract had been executed and the builder's performance had been completed before the effective date of the 1975 amendment—but the action was commenced after that effective date. *Id.* The builder alleged, under the amended law, that he was registered with the Builders Board at the time the action was commenced. *Id.* In concluding that the amendment applied, the court stated:

> "[W]hen a provision like ORS 701.065 specifically operates upon a builder's rights when he seeks a remedy for a failed transaction, the application of the 1975 amendment to this 1976 action is not retroactive at all. It might be called retroactive or retrospective if one attributed to the original legislation a purpose to entitle the customers of unregistered builders to free construction services, rather than merely to enforce the registration requirement. But it appears from the text and the legislative history that the disqualification of unregistered builders was only an enforcement device, and that it was amended in 1975 precisely to permit a builder to avoid a forfeiture by registering before he filed his lien or suit. We see no reason to doubt that the legislature meant this change to apply to all cases in which such a remedy is sought after the effective date of the amendment."

*Id.* at 80-81.

In the present case, as in *Mahana*, there is no apparent reason why the legislature would not have intended its enactment to apply to actions commenced after the effective date. The manifest intent of ORS 701.565 to 701.595 was to require parties to this type of dispute to take steps to settle

their differences before initiating court action. Nothing in the text of those statutes, or in the apparent rationale behind their enactment, suggests that the legislature would not have intended the provisions to apply to an action such as this commenced after the effective date of the legislation.

Affirmed.