Argued and submitted September 11, 2009, affirmed June 16, 2010

**PORTLAND GENERAL ELECTRIC COMPANY,**
an Oregon corporation,
*Plaintiff-Appellant,*

*v.*

William Ray MEAD
and Frances Marie Mead,
husband and wife,
*Defendants-Respondents,*

*and*

FIDELITY NATIONAL TITLE INSURANCE
COMPANY OF OREGON
and Wells Fargo Bank, N. A.,
*Defendants.*

Columbia County Circuit Court
062137; A139931

234 P3d 1048

David H. Griggs argued the cause for appellant. With him on the briefs were Shane P. Swilley and Dolan Griggs LLP.

Richard S. Diaz argued the cause for respondents. With him on the brief was Macpherson, Gintner & Diaz.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.*

SERCOMBE, J.

---

* Brewer, C. J., *vice* Edmonds, P. J.

**SERCOMBE, J.**

The issue in this case is one of law—whether a statutory change to costs, including attorney fee awards, in eminent domain cases applied to cases that were pending when the statute went into effect. The trial court concluded that the statute applied to all prospective cost awards without regard to when the case was filed, and awarded costs. Condemnor appeals. For the reasons stated below, we conclude that the statute requires an award of attorney fees in this case and, therefore, affirm.

■ Under Oregon law, a condemning authority must make a written offer to purchase property for its fair market value before filing a condemnation complaint. ORS 35.346(1). The purpose of that prefiling offer is "to reduce the incidence of expensive and time-consuming litigation by requiring that the condemnor offer an amount that would encourage the condemnee to settle his claim for 'just compensation.'" *State ex rel Dept. of Trans. v. Glenn*, 288 Or 17, 25, 602 P2d 253 (1979). As a further incentive to promote efficient case resolution, ORS 35.346(7) provides for an award of costs, including attorney fees, to the condemnee if the amount of just compensation awarded by verdict exceeds the amount of compensation proposed in a preverdict offer by the condemnor or if the prefiling offer "did not constitute a good faith offer of an amount reasonably believed by the condemnor to be just compensation."

Between the initial negotiations to acquire property and a verdict in a condemnation trial, there may be many offers to purchase the property by a condemnor. This case concerns a shift in the law as to which of those offers is compared to the compensation awarded in the verdict for purposes of determining whether to award costs to the condemnee. After this case was filed, the law changed to require costs based on a comparison of the verdict with an earlier, prefiling offer. The issue is whether costs are allowable in this case based on the new law.

Between 1974 and 2006, ORS 35.346 required payment of costs, including attorney fees, to the condemnee if the verdict amount exceeded the "highest settlement offer" by

the condemnor made "at least 30 days prior to the commencement of trial." As originally adopted in 1973, ORS 35.346 provided:

> "(1)   At least 20 days prior to the filing of any action for condemnation of property or any interest therein, the condemner shall make a written offer to the owner or party having an interest to purchase the property or interest, and to pay a stated amount as compensation therefor and for any compensable damages to the remaining property.
>
> "(2)   If a trial is held for the fixing of the amount of compensation to be awarded to the defendant owner or party having an interest in the property being condemned, the court shall award said defendant costs and disbursements including reasonable attorney fees and reasonable expenses * * * in the following cases, and no other:
>
> "(a)   If the amount of just compensation assessed by the verdict in the trial exceeds the highest written offer in settlement submitted by condemner to those defendants appearing in the action at least 30 days prior to commencement of said trial; or
>
> "(b)   If the court finds that the first written offer made by condemner to defendant in settlement prior to filing of the action did not constitute a good faith offer of an amount reasonably believed by condemner to be just compensation."

Or Laws 1973, ch 617, § 2.[1] Additional parts were added to ORS 35.346 in 1997 to require provision of a written appraisal or value explanation with the prefiling offer and to allow arbitration of condemnation claims. Or Laws 1997, ch 797. In 2003, the time for the prefiling offer was changed from 20 days to 40 days before filing. Or Laws 2003, ch 476, § 1.[2]

In 2005, plaintiff Portland General Electric Company initiated efforts to acquire easements for a power transmission line that would connect its Port Westward

---

[1] Section 3 of the 1973 law stated that "[t]his Act shall be effective January 1, 1974, and shall be applicable to condemnation cases filed on or after that date."

[2] The 2003 amendments expressly provided that "[t]he amendments to ORS 35.346 by section 1 of this 2003 Act apply only to actions for condemnation filed on or after the effective date of this 2003 Act." Or Laws 2003, ch 476, § 2.

Generation Plant with another transmission line. The proposed transmission line would traverse real property owned by defendants. Negotiations between the parties for purchase of an easement were unsuccessful. On January 9, 2006, plaintiff sent defendant its 40-day prefiling offer letter pursuant to ORS 35.346(1), proposing to purchase the easement for $5,317. Defendants rejected that offer. Plaintiff filed its condemnation complaint on March 7, 2006, in Columbia County Circuit Court.

Ultimately, plaintiff made its highest pretrial written offer of settlement for $40,000 on June 28, 2007. After a trial in early January 2008, the jury entered a verdict finding "just compensation for the subject property to be $32,500.00." Under the law in effect at the time the case was filed, defendants would not be entitled to costs, including attorney fees, because "the amount of just compensation assessed by the verdict in the trial," $32,500, did not exceed "the highest written offer in settlement submitted by condemner * * * at least 30 days prior to commencement of * * * trial"—$40,000. ORS 35.346(7) (2006).

However, between the time the case was filed in 2006 and the jury verdict in 2008, the law changed. On November 7, 2006, Oregon voters approved Ballot Measure 39. Measure 39 changed condemnation law in two significant ways. The first change was a response to the United States Supreme Court's decision in *Kelo v. City of New London*, 545 US 469, 125 S Ct 2655, 162 L Ed 2d 43 (2005). *Kelo* determined that acquisition of property by a public condemnor for reconveyance to a private entity was a "public use" in some circumstances under the just compensation clause of the Fifth Amendment to the United States Constitution. Section 2 of Measure 39 added a provision to ORS chapter 35, the General Condemnation Procedure Act, now codified at ORS 35.015. ORS 35.015(1) provides that, with some exceptions, "a public body * * * may not condemn private real property * * * if at the time of the condemnation the public body intends to convey fee title * * * or a lesser interest than fee title, to another private party."

Section 4 of the measure amended ORS 35.346, relating to the award of costs, including attorney fees, in a

condemnation case. ORS 35.346(1), requiring an offer of just compensation at least 40 days before the filing of a complaint, was not changed. However, ORS 35.346(7), pertaining to the award of costs, was. Rather than requiring an award of costs, including attorney fees, to defendant when the amount of the verdict exceeds the "highest written offer in settlement submitted by the condemner * * * at least 30 days prior to commencement of * * * trial," the measure amended ORS 35.346(7) to provide for costs when the amount of the verdict "exceeds the initial written offer in settlement submitted by condemner * * * pursuant to [the prefiling offer required by ORS 35.346(1)]." Thus, as amended in 2006, ORS 35.346(7) provided:

> "If a trial is held or arbitration conducted for the fixing of the amount of compensation to be awarded to the defendant owner or party having an interest in the property being condemned, the court or arbitrator shall award said defendant costs and disbursements including reasonable attorney fees and reasonable expenses as defined in ORS 35.335(2) in the following cases, and no other:

> "(a)  If the amount of just compensation assessed by the verdict in the trial exceeds the initial written offer in settlement submitted by condemner to those defendants appearing in the action pursuant to subsection (1) of this section; or

> "(b)  If the court finds that the first written offer made by condemner to defendant in settlement prior to filing of the action did not constitute a good faith offer of an amount reasonably believed by condemner to be just compensation."

Measure 39 lacked any provision that specified whether it applied to pending condemnation cases. The law became effective on December 7, 2006. Article IV, section 1(4)(d), of the Oregon Constitution (initiated or referred measure "becomes effective 30 days after the day on which it is enacted or approved by a majority of the votes cast thereon").[3]

---

[3] The General Condemnation Procedures Act was amended in 2009 to change the attorney fee rules again. Or Laws 2009, ch 530. Those changes "apply only to condemnation actions filed on or after the effective date of this 2009 Act[, January 1, 2010]." *Id.* § 3. Under that law, attorney fees are awarded when the verdict exceeds the "highest," rather than "initial," prefiling offer of compensation. *Id.* § 1.

All subsequent references in this opinion to ORS 35.346 are to the 2006 version.

If that cost provision applied to pending condemnation cases, defendants would be entitled to costs, including attorney fees. The amount of the verdict ($32,500) exceeded the initial written prefiling settlement offer ($5,317). Following arguments by the parties as to the operative effect of ORS 35.346(7), the trial court reasoned:

"As I read it, the language of ORS § 35.346(7) is not ambiguous. It is clearly prospective, in that it applies to trials occurring in the future. It is also clear that if the result at that future trial is that the initial written offer made by the condemner is exceeded by the verdict, the court 'shall' award costs and disbursements including reasonable attorney fees, and reasonable expenses (elsewhere defined).

"Plaintiff argues that this interpretation of the amended statute amounts to a retroactive application of Measure 39, since Plaintiff was operating in a pre-Measure 39 environment when the initial written offer was made, and I am mindful of the hardship imposed on Plaintiff by the subsequent change in the statute. However, reading ORS § 35.346(7) to mean that its attorney fees provision only applies to initial written offers made at some future point (following the date Measure 39 took effect) requires insertion of content omitted from the statute, and would amount to 'super-prospectivity' (my term)."

Following this ruling, the trial court entered a supplemental judgment awarding defendants costs, including attorney fees, in the amount of $59,196.60.

Plaintiff appeals from that supplemental judgment. On appeal, plaintiff argues that the application of ORS 35.346(7) to pending condemnation cases is a retroactive application of the statute and inconsistent with the trial court's determination that the legal effect of the statute was prospective in nature. Plaintiff further contends that the implied intent of the voters in adopting Measure 39 was to

Moreover, under a provision now codified as ORS 35.300, the condemnor may serve an "offer of compromise" at any time up to 10 days before trial. If the defendant does not obtain a more favorable judgment, it may not recover any "prevailing party fees or costs and disbursements, attorney fees and expenses" that were incurred on or after service of the offer. *Id.* § 5.

apply the new law in ways that do not alter the legal effect of a preexisting initial written offer. Plaintiff draws that inference from the present tense of the text of the measure, the lack of an express retroactivity clause, and from discussion in the voter's statements on Measure 39 about the law's operation in the future. To the extent that the voters' intent is unclear from the text, context, and adoption history of the measure, plaintiff contends that the change in the legal effect of an initial offer made by the measure is substantive in character and ought to apply prospectively only to offers made after the effective date of the measure. Plaintiff's focus is on the disfavored retroactive effect of the law on a transaction—the initial pretrial offer—completed before the law was adopted.

Defendants respond that the statute is unambiguous—that it states that a court "shall award * * * costs and disbursements, including reasonable attorney fees" whenever a verdict entered after the effective date of the law exceeds the initial pretrial offer to purchase. The effect of the law is prospective, according to defendants, because the event that gives rise to their right to costs—a just compensation verdict—occurred after the law went into effect. Defendants' contend that the law is remedial, so that it implicitly can be based on past events. Thus, defendants conclude that the trial court did not err in applying Measure 39 to allow the attorney fees award.

■ The issue, then, is whether the amendments to ORS 35.346(7) under Measure 39 apply to cases pending at the time of the measure's enactment. To begin with, the legal efficacy of a law does not depend on whether it operates only prospectively. As noted in *Whipple v. Howser*, 291 Or 475, 480, 632 P2d 782 (1981),

"[b]arring constitutional limitations, the legislature may impose any special conditions it desires upon its enactments. Moreover, this court has recently held that, with the exception of ex post facto laws, there is no constitutional bar to the legislature providing that its laws be applied retroactively. Thus, in determining whether to give retroactive effect to a legislative provision, it is not the proper function of this court to make its own policy judgments, but its duty

instead is to attempt to 'discern and declare' the intent of the legislature."

(Citation and footnote omitted.)

Instead, the scope of a statute, the circumstances to which it applies, is solely a matter of statutory construction. The method by which we discern the intent of a statute's drafters is well known. We generally determine that intent from the text, context, and legislative history of the statute, resorting if necessary to maxims of statutory construction. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). The method for interpreting initiated statutes is the same:

> "In interpreting a statute enacted by initiative, we apply standard principles of statutory construction. *Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 559, 871 P2d 106 (1994). We attempt to ascertain the intention of the voters, looking first to the text of the measure in its context. If that inquiry does not clearly reveal the voters' intention, we also examine the legislative history and, if necessary, other aids to construction. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993)."

*State v. Allison*, 143 Or App 241, 244-45, 923 P2d 1224 (1996).

That particular statutory construction question— whether a statute operates to change the legal effect of past transactions—has specific rules of textual analysis and max- ims of construction that the court reiterated in *Strizver v. Wilsey*, 210 Or App 33, 37-38, 150 P3d 10 (2006), *rev den*, 342 Or 474 (2007):

> "[W]e look first to text and context and, in the absence of an express retroactivity clause, we consider such textual cues as verb tense and other grammatical choices that might suggest what the legislature had in mind. We also consider whether the legislature, elsewhere in the same bill, included any express retroactivity provisions, a fact that is not necessarily dispositive but can be telling.
>
> "If text and context are inconclusive, we next consider legislative history. Not surprisingly, when a statute lacks an express retroactivity clause, the legislative record is typ- ically silent and of no assistance. The analysis therefore

often moves past that step in short order and on to maxims of construction. In effect, maxims are rules or aids of construction that assist us in determining probable legislative intent when it is impossible to discern from a statute itself whether the legislature intended it to apply retroactively.

> "The maxims that apply in a particular instance depend in part on the substance of the enactment. * * * But most often we are left to examine whether a provision is 'remedial' versus 'substantive' in nature. If it is remedial, it presumptively applies retroactively; if it is substantive, it presumptively applies prospectively only."

(Brackets in original; citations omitted; some quotation marks omitted.)

In *Strizver*, the court also recited the test for whether a law is "substantive" as opposed to "remedial":

> "The basic test for whether a law is 'substantive' concerns whether application of it will ' "impair existing rights, create new obligations or impose additional duties with respect to past transactions * * *." ' *Joseph* [*v. Lowrey*, 261 Or 545, 547, 495 P2d 273 (1972)] (quoting *Kempf v. Carpenters and Joiners Union*, 229 Or 337, 343, 367 P2d 436 (1961)). 'Remedial' statutes, by contrast, are those 'which pertain to or affect a remedy, as distinguished from those which affect or modify a substantive right or duty.' *Perkins v. Willamette Industries*, 273 Or 566, 571 n 1, 542 P2d 473 (1975)."

210 Or App at 38 (omission in *Strizver*).

■ The first step in the analysis is to attempt to discern the voters' intent on the scope of the measure from its text and context. As noted above, the trial court was persuaded that the operative effect of the amendments to ORS 35.346(7) was apparent from its plain text. As amended, ORS 35.346(7) required an award of costs ("the court * * * shall award said defendant costs and disbursements including reasonable attorney fees") in cases where a trial is held ("[i]f a trial is held * * * for the fixing of the amount of compensation to be awarded") and the verdict exceeds the initial prefiling offer ("[i]f the amount of just compensation assessment by the verdict in the trial exceeds the initial written offer in settlement * * * pursuant to subsection (1) of this section").

It is reasonable to read the statute to apply to *all* trials and qualifying verdicts that occur after the statute takes effect. Indeed, in this type of case, Oregon courts have relied on the present tense of a statute to infer its application to all future events described in the law. In *Strizver,* new statutory notice and remediation requirements were held to apply to bar a construction defect action, when the law became effective after the home construction and discovery of the defects, but before the initiation of the lawsuit. The statute imposing the new requirements applied by its terms when " 'an owner * * * *commences a court action* against any contractor * * * assert[ing] a claim arising out of or related to the construction * * * of a residence.' (Emphasis added.)" 210 Or App at 41-42. The defendants argued that the legislation in dispute was not retroactive, in that it applied to all court actions commenced after its effective date. The court agreed, noting that the "present-tense 'commences' indicates a legislative intent that the enactment would apply any time an owner 'commences' an action after the effective date of the act." *Id*. at 42. The court found that "[n]othing in the text of those statutes, or in the apparent rationale behind their enactment, suggests that the legislature would not have intended the provisions to apply to an action such as this commenced after the effective date of the legislation." *Id*. at 45.

Similarly, the issue in *Cuff v. Department of Public Safety Standards,* 345 Or 462, 198 P3d 931 (2008), was whether newly adopted statutory and rule standards applied to justify revocation of a corrections officer's certification based on conduct occurring before adoption of the standards. The statute in question, ORS 181.662(1), provided, in part, that the department

"may * * * revoke the certification, of any * * * public safety officer * * * based upon a finding that:

"* * * * *

"(c)   The public safety officer * * * does not meet the [applicable standards]."

The court determined that ORS 181.662(1)(c) "is not, by its terms, retroactive" because it gave the department "*present* authority to revoke a public safety officer's certification based

on the public safety officer's *present* failure" to meet standards. *Cuff*, 345 Or at 470 (emphasis in original). *But see Bahr v. Ettinger*, 88 Or App 419, 424, 745 P2d 807 (1987) (ORS 20.105, allowing attorney fees for bad-faith filing of litigation, held not to apply to lawsuits pending on its effective date: "The application of the statute to pending litigation does not become prospective merely because the litigation is continued after the statute becomes effective.").

The text of amended ORS 35.346(7), then, states an intent that the statute be applied in condemnation proceedings in which a verdict is returned after its effective date. What is less clear, however, is whether the law's new reference to initial prefiling offers pertains to offers made after the effective date of the law or to any offer whenever made. ORS 35.346(7) required an award of costs only if a verdict entered after its effective date exceeded the "initial written offer in settlement submitted by condemner * * * pursuant to subsection (1) of this section." ORS 35.346(1) describes the required 40-day prefiling offer of just compensation and damages. The term "offer * * * pursuant to subsection (1) of this section" was added to the law by Measure 39 and could mean one made after the effective date of the measure. On the other hand, the term could refer to an offer made at any time. In that regard, the voters' intent as to the scope of the law is ambiguous.

Our decision in *Vloedman v. Cornell*, 161 Or App 396, 984 P2d 906 (1999), addresses an analogous issue. The issue there was "whether a statute providing for an award of attorney fees to a successful plaintiff in an action for damages to crops applies when the action was initiated after the statute's effective date but was based on conduct that occurred before its effective date." *Id.* at 398. The statute in question, ORS 105.810(2), allowed a discretionary award of attorney fees to claimants who recovered under the statute for damages to crops. In that case, the statute became effective after the damage occurred but before the action was filed.

We noted that the statute "does not expressly state whether it is intended to apply to actions that are filed after the effective date but that are based on conduct that occurred before the effective date" and that the "wording of the statute

[does not] provide any other cues as to possible retroactive intentions." *Id.* at 400. Thus, "[w]e must rely on relevant maxims of construction in lieu of actual evidence of the legislature's intentions." *Id.*

Here, as in *Vloedman*, the language of the statute does not provide any clues as to its drafters' intent regarding retroactivity. We conclude, then, that ORS 35.346(7) was intended to apply to verdicts in condemnation proceedings entered after the effective date of the statute but that its application to all initial prefiling offers to purchase is not clear from the text of the statute. The parties' contextual arguments and the adoption history of the measure do little to clarify the legislative intent, and so we are left, in the words of the *Vloedman* court, to "rely on relevant maxims of construction in lieu of actual evidence of the legislature's intentions."[4]

■     As noted earlier, the relevant maxim of construction is that a "substantive" law, one that will "impair existing rights, create new obligations or impose additional duties with respect to past transactions," will be presumed to apply prospectively only to future transactions; whereas a "remedial" law, one "which pertain[s] to or affect[s] a remedy" will presumably apply retroactively to allow the remedy even if based on past events. *Strizver*, 210 Or App at 38. By those standards, the 2006 change to the cost allowance in ORS 35.346(7) is remedial in character. The law modified an existing remedy—the provision of costs to a condemnee after a just compensation verdict. It provides a remedy to a condemnee who litigates and incurs costs and attorney fees because insufficient compensation was offered by the condemnor at the beginning of the acquisition process.

---

[4] Prior enactments of ORS 35.346 provide some limited, but not dispositive, context. *State v. Webb*, 324 Or 380, 390, 927 P2d 79 (1996) (reasoning that "prior enacted versions of that statute" serve as a "contextual clue" of its present meaning). When ORS 35.345 was enacted in 1973, the law specified that it applied to "condemnation cases filed on or after [the effective date of the law]." Or Laws 1973, ch 617, § 3. Similarly, when the statute was amended in 2003 to change the time of the prefiling offer, the amendment provided that the change applied "only to actions for condemnation filed on or after the effective date of this 2003 Act." Or Laws 2003, ch 476, § 2. The absence of a similar provision narrowing the effect of Measure 39 suggests that a broader coverage was intended.

Our cases have classified statutes allowing the recovery of litigation costs as remedial in character. In *Vloedman*, an attorney fee statute was found to apply to an action initiated after the statute's effective date but based on conduct prior to that time. The attorney fee provision was added to a statute already providing for triple damages for damage to crops. We concluded that it "was added to the statute without altering any underlying legal duties." 161 Or App at 401. Moreover, the statute in question provided for attorney fees as a part of the assessment of costs in the case. We noted:

> "The distinction between attorney fees as costs and attorney fees as a consequence of substantive liability has proven critical in prior cases. In *Spicer v. Benefit Ass'n of Ry. Emp.*, 142 Or 574, 601, 21 P2d 187 (1933), for example, the court concluded that an attorney fees provision was retroactive because the statute permitted 'nothing more than the imposition of a cost item for which there was already a liability prior to * * * enactment.' In contrast, in *Zaik/Miller v. Hedrick*, 72 Or App 20, 695 P2d 88 (1985), we held that ORS 20.105(1), which provides for an award of attorney fees in the event of willful disobedience of a court order or bad faith, does not apply retroactively. We reasoned that, 'unlike the statute construed in *Spicer* * * *, ORS 20.105 pertains to attorney fees that are not part of costs.' *Zaik/Miller*, 72 Or App at 23. In this case, the legislature used phrasing that places ORS 105.810(2) squarely under the rubric of *Spicer*."

*Id.* (omissions in *Vloedman*); *see also Fromme v. Fred Meyer, Inc.*, 306 Or 558, 561, 761 P2d 515 (1988) (reasoning that the following statement from the American Law Reports, 96 ALR 1428 (1935), "is consistent with Oregon law regarding the application of new legislation": "whether costs may be allowed in an action or suit * * * is governed by the law as it exists at the time of the judgment which terminates the action or suit, rather than by the law as it existed at the time when the action or suit was commenced" (omission in *Fromme*)).

The amendments to ORS 35.346(7) by Measure 39 changed the manner of assessing costs, including attorney fees, after a condemnation verdict. Before the amendments,

ORS 35.346(7) provided for an award of costs to a condemnee. The cost remedy was not new. Under the reasoning of *Vloedman* and *Spicer*, the law is remedial in character because it modified an existing remedy for costs. We conclude that ORS 35.346(7) is primarily an expansion of a remedy available to condemnees and has a retroactive effect. Accordingly, the trial court did not err in awarding defendants their costs, including attorney fees, as permitted by that statute.

Affirmed.